B. HENRY JONES v. MOUNT HOLLY WATER COMPANY.

Argued November 5, 1914—Decided April 15, 1915.

1. One who undertakes to trade in water and supply customers therewith, is bound to use reasonable care that the water so supplied shall be ordinarily and reasonably pure and wholesome.

2. Actual notice or knowledge of the unwholesomeness of the water of defendant company is not an essential element to be proven, in order to establish defendant's liability; it is sufficient if there was testimony tending to show that the defendant, in the exercise of reasonable care, might have discovered the unwholesome and dangerous condition of the water.

3. Where the injury complained of by the plaintiff was that three of his children contracted typhoid fever by drinking water furnished by the defendant, the plaintiff is not required to prove with absolute certainty that the drinking of the water was the cause of the illness of his children. The burden which the law imposes upon him is satisfied by proof of facts and circumstances from which it may reasonably appear that drinking the water was the probable efficient cause of the typhoid fever.

4. It is only where it appears that the injuries were occasioned by one of two causes, for only one of which the defendant was responsible, that the plaintiff must prove such facts and circumstances as will exclude the equal probability of the injury having resulted from the cause for which the defendant is not liable.

On defendant's rule to show cause.

Before Justices SWAYZE, PARKER and KALISCH.

For the rule, V. Claude Palmer and Lewis Starr.

Contra, James M. Davis.

The opinion of the court was delivered by

KALISCH, J. The defendant, a corporation, is engaged in the business of supplying water for drinking and domestic purposes in the township of Northampton, in the county of Burlington.

It supplied water for the purposes stated to the inhabitants of Mount Holly, among whom were the plaintiff and his family.

For the supply of water to be furnished by the defendant company to the plaintiff for his and his family's use, the plaintiff paid the defendant company $25.90 (one year's supply), in advance, from April 1st, 1911, to April 1st, 1912.

In January, 1912, three of the plaintiff's children became ill, which illness was diagnosed as typhoid or para typhoid fever.

The plaintiff claims that the illnesses of his children were attributable to the drinking water supplied by the defendant company, the water being in an impure and unwholesome state, in that it was permeated with dirt and filth, and contained para typhoid germs in large quantities, which the defendant knew or ought to have known in the exercise of due and reasonable care.

The plaintiff sued the defendant to recover the moneys expended by him for medical services, medicines and nursing required by the children during their illnesses, and for loss of time incurred by him as a result thereof.

The plaintiff recovered a verdict for $750.

The defendant seeks to have this verdict set aside for the various reasons hereafter referred to and considered.

No claim is made that the verdict is excessive.

The first reason assigned in the brief of counsel of the defendant is that the case does not show any contractual relation between the plaintiff and defendant, and that the complaint is one founded upon contract with an imperfect allegation of negligence. But no point is sought to be made of this and we cannot very well perceive how a successful attack can now be made on the nature and character of the pleadings, since it appears that the parties to the controversy treated the action as one of negligence, and that the cause was tried out and submitted to the jury in that aspect.

The second reason relied on by the defendant for a new trial is that the plaintiff had failed to establish any negli-

gence of the defendant which proximately resulted in the illnesses of the plaintiff's children.

There was plenary testimony from which a jury might have reasonably inferred that the water furnished by the defendant company was polluted with fecal matter and other filth and contained germs indicating the presence of typhoid germs in the water. This testimony came from witnesses, who spoke of the polluted condition of the water along the sources of supply of the defendant company in the month of December, 1911, and before that time and prior to the breaking out of a typhoid fever epidemic in Mount Holly in the months of January, February and March, 1912.

From the testimony it is also apparent that the bad condition of the water-supply and the nature and character of the sources of the pollution were matters which were so open and above the surface that they would give rise to the fair inference that those conditions were known to the defendant company or, at least, ought to have been known by it before January, 1912.

Besides all this there was proof of actual knowledge of the defendant company of the pollution of the water and the sources of its pollution extending back a period of three and a half years prior to the. outbreak of the typhoid fever epidemic. The letter written by the defendant company under date of March 12th, 1912, to the state board of health is evidence of that· fact.

In addition there were twenty-three cases of typhoid fever in a population of six thousand, from December 1st, 1911, to February 26th, 1912, a majority of the cases occurring in January, and all of which persons so afflicted, with two or three exceptions, had been using and drinking the water supplied by the defendant company.

The testimony relating to the cases of typhoid fever prevailing after the plaintiff's children were taken ill was objected to on the ground that is was immaterial and irrelevant, but we think that it was material and relevant on the question whether or not the water supplied by the defendant

company, which was drunk by the persons who had been afflicted with the fever, was the source of the disease.

It must be borne in mind that the defendant company was in the water-supply business for profit. The plaintiff had paid for the supply which he was to receive in advance. Hence it became the duty of the defendant company to give to the plaintiff water fit for domestic purposes, including fitness for drinking.

Water is a necessity of life and one who undertakes to trade in it and supply customers stands in no different position to those with whom he deals than does a dealer in foodstuffs. He is bound to use reasonable care that whatever is supplied for food or· drink shall be ordinarily and reasonably pure and wholesome.

In *Tomlinson* v. *Armour & Co.*, 75 *N. J. L.* 748, it was held by our Court of Errors and Appeals, that a declaration alleging that defendant was engaged in the business of putting up tin cans or vessels and vending meats for food and domestic use, which was sold by the defendant to a retail dealer, to be sold to customers and patrons; that plaintiff purchased said can of ham from said retailer for food and domestic use; that the defendant negligently put up in said can of ham diseased, unfit and unwholesome ham, which was deleterious and poisonous to the human body and health, and that the plaintiff without fault or negligence on her part, ate a piece of ham taken from said can, and in consequence thereof became poisoned and sick with ptomaine poison, stated a good cause of action, notwithstanding the absence of *scienter*.

The legal principle laid down in that case is only applicable to the facts of the present case in so far as it requires the exercise of reasonable care that the water furnished shall be reasonably pure and wholesome, and that negligently furnishing water which is deleterious to the human body or health, will furnish a valid cause of action to a customer injured by the use of the water.

Actual notice or knowledge of the unwholesomeness of the water of the defendant company was not an essential element

to be proven in order to establish the defendant's liability; it was sufficient if there was testimony tending to show that the defendant in the exercise of reasonable care might have discovered the unwholesomeness and dangerous condition of the water.

And the case *sub judice* differs from the case cited in this essential particular, that the streams from which the water-supply is taken are not under the immediate supervision and care of the water company, and covering many miles in area may be easily polluted and contaminated without the knowledge of the water company, whereas in the canning of the ham, that was done in the factory of the Armour & Company, and by its servants.

We think that the plaintiff properly met the burden of establishing that the defendant either knew, or in the exercise of due and reasonable care would have ascertained that the water it was furnishing its customers in Mount Holly was impure and contaminated with germs deleterious to the human body and health.

The duty resting upon the water company was to furnish its customers, for consumption, pure and wholesome water.

In *Jersey City* v. *Flynn*, 74 *N. J. Eq.* 104, 135, 136, the contract requirement of the water company was: "that the water delivered therefrom shall be pure and wholesome and free from pollution deleterious for drinking and domestic purposes."

We think that this contract stipulation aptly states what a public water-supply should be.

And in *Peffer* v. *Pennsylvania Water Co.*, 221 *Pa.* 578; 70 *Atl. Rep.* 870, it was held that the obligation of a water company to its customers is to furnish water that is ordinarily pure and wholesome; that pure and wholesome water necessarily means such as is reasonably free from bacteria and coli, or any other infection or contamination which renders the water unfit for domestic use and unsafe and dangerous to individuals.

Viewing the facts of the present case in the light of the duty resting upon the defendant company, the plaintiff met

the burden of establishing the defendant's liability by the introduction of testimony which tended to prove open and notorious pollution and contamination of streams connected with the defendant's sources of water-supply.

But it is claimed that there was no proof of any typhoid germs in the water and that, therefore, there is no tenable ground for imputing the typhoid fever to the drinking of the water.

This argument does not commend itself to us as sound. There was proof to the effect that for a long period of time before the outbreak of the typhoid fever epidemic there were discharged into the sources of the defendant's water-supply, large quantities of fecal and vegetable matter, which the scientific experts testify are indicative of the presence of the bacilli coli and which in turn indicate the presence of typhoid fever germs, but not necessarily so. And where there are bacilli coli in any considerable quantity there is a probability of the presence of the typhoid fever germ. Furthermore, it appears that the president of the defendant company came before the board of health in response to a communication sent to the defendant by the town clerk relating to the water-supply, and made statements relating to the condition of the water before the outbreak of the fever. It is true that this letter was written in June, 1912, six months after the appearance of the epidemic, but since it appears that the president of the defendant company appeared on its behalf to explain the condition of the water-supply as it had been and what was done to remedy it, we think the statements he made in that regard as to what was done by the company to ascertain the condition of the water-supply prior to or at the time of the outbreak of the epidemic were competent to be given in evidence. *Halsey* v. *Lehigh Valley Railroad Co.,* 45 *N. J. L.* 26; *Agricultural Insurance Co.* v. *Potts,* 55 *Id.* 158; *Carey* v. *Wolff Co.,* 72 *Id.* 510.

From his statements it appears that bacilli coli were found in the tests made of the water after going through the filtration plant of the defendant company.

The plaintiff was not legally required to prove by positive testimony and with absolute certainty that the drinking of the water was the cause of the typhoid fever.

The plaintiff satisfied the burden which the law imposed upon him by proving such facts and circumstances from which it was made to reasonably appear that the drinking of the water was the probable efficient cause of the typhoid fever. *Wilkins* v. *Standard Oil Co.,* 78 *N. J. L.* 524.

It is only where it appears that the injuries were occasioned by one of two causes, for one of which the defendant is responsible but not for the other, the plaintiff must prove such facts and circumstances as will exclude the equal probability of the injury having resulted from the cause for which the defendant is not liable. *Stumpf* v. *Delaware, Lackawanna and Western Railroad Co.,* 76 *N. J. L.* .153.

The present case is barren of any testimony from which a reasonable inference can be drawn that the illnesses of the plaintiff's children were due to any other cause than that of the water supplied by the defendant.

The defendant makes the further contention that the plaintiff's case must fail because the allegation in his complaint is that the illness with which each of his children was afflicted was typhoid fever, whereas it appears by the testimony that it was not true typhoid, but was what is known in medical learning, para typhoid, a much milder form of disease.

We think that it is a matter of no consequence whether or not the illnesses which the plaintiff's children had were true typhoid fever, the crucial question being, were their illnesses due to the unwholesomeness of the water supplied by the defendant.

We do not find anything in the defendant's criticisms of the judge's charge or in the exceptions taken to the admission or rejection of testimony in the cause which would warrant a disturbance of the verdict.

The rule to show cause will be discharged.