EMILY A. CASSINI AND JOSEPH C. CASSINI, PLAINTIFFS-APPELLEES, v. THE CURTIS CANDY COMPANY, AN ILLINOIS CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANT-APPELLANT.

Submitted January 26, 1934—Decided May 16, 1934.

Before Justices PARKER, LLOYD and PERSKIE.

For the appellant, *Insley, Vreeland & Decker* (*William E. Decker,* of counsel).

For the appellees, *Wiener & Stanziale* (*Charles A. Stanziale,* of counsel).

The opinion of the court was delivered by

PERSKIE, J.   The plaintiff Emily A. Cassini, wife of Joseph C. Cassini, purchased a bar of "Baby Ruth" candy from one, Carolina Generazzo, a retail candy store keeper. Save as the deposition of Karl E. Keefer, vice-president of the defendant company, disclosed that it experienced some difficulties in the imitation of its products by competitors, defendant did not deny that the candy in question was manufactured by it. On the part of the plaintiffs, Mrs. Generazzo, when asked whether this candy which she purchased from a jobber, was manufactured by the defendant, answered, "I think so." Further examination of the last mentioned witness disclosed the following: "*Q.* Now, does this candy indicate that it was made by——." The court—"Don't ask her that. You are offering the wrapper and everything." Mr. Stanziale—"Is there any objection to this?" Mr. Symanski— "No." At all events no point is made by defendant on this score. The candy so purchased by the plaintiff was wrapped in defendant's special paper and apparently had some sort of seal on it. Examination of plaintiff: "*Q.* And is this the seal that was wrapped around the candy at the time? (showing the witness seal). *A.* Yes, it is." Later the same witness testified that while she was home she took a bite of the candy, swallowed it and had a funny taste in her mouth. She looked at the other portion of the candy and said she saw another worm. She vomited and became sick. She further testified: "*Q.* I mean before you threw up—as you say—did you have any pain? *A.* Before I threw up? No, *after I swallowed the candy worm—then after that I threw up.*" She was in bed for three days and incapacitated for about a week.

Defendant moved for a nonsuit. The motion was based

on substantially the following grounds: (a) That there was no proof of any contractual relationship between the parties; (b) that there was no proof that there was any worm in the candy that was eaten, and (c) that there was no proof of negligence on the part of the defendant in the premises.

The defendant then introduced the deposition of its vice-president, Mr. Keefer, which detailed the process of the manufacture of the "Baby Ruth" candy; the high standard or quality of its ingredients, and the general care on its part in the manufacture thereof, all of which tended to exculpate defendant of any negligence in the premises. A motion was made for a directed verdict on practically the same grounds as those advanced on the motion for a nonsuit. This motion was also denied. The court permitted the addition of a "third count," based on an implied warranty and later rendered a judgment of $150 in favor of the wife and one for $50 in favor of the husband.

The failure to grant the motions of nonsuit and to direct a verdict constitutes the sole specifications of determination with which the appellant is dissatisfied in point of law.

It appears to us that the determinative fact involved in this case is (1) whether the plaintiff became ill and suffered the injuries complained of as a result of having eaten a worm, or the emanations from it had permeated the candy that she had eaten, and one or the other of these had physically affected the woman; or (2) whether she became ill and suffered the injuries complained of merely because of the sight of a worm in the candy. *Legac* v. *Vielmeyer Bros., 7 N. J. Mis. R.* 685; *147 Atl. Rep.* 110.

Thus it appears to us that the case at bar on the question of proof and causation can more appropriately be aligned with *Griffin* v. *James Butler Grocery Co., 108 N. J. L.* 92; *156 Atl. Rep.* 636, in which plaintiff and other members of the family, after eating a meal including canned peaches sold by defendant, became violently ill. It appeared that all ate the peaches with the exception of a son who was the only one not affected. The evidence was to the effect that the other food, consisting of tea, toast, milk and eggs were in the usual

condition and presumably wholesome. The Court of Errors and Appeals sustained a verdict for the plaintiff holding that an inference arose that plaintiff became ill by reason of eating deleterious peaches. While it is true that the case cited turns on an implied warranty rather than upon negligence, it is cited to indicate that it was open to the jury, in the instant case, to draw the legitimate inference that the candy which the plaintiff had eaten was wormy.

We think that the evidence, as already indicated, and the legitimate inferences that could be drawn from that evidence, fully justified the finding of the trial judge. ·

In the case of *Nock* v. *Coca Cola Bottling Works of Pittsburgh* (*Pennsylvania,* 1931), 156 *Atl. Rep.* 537, it was held:

"There is considerable confusion in the decisions as to the theory of the liability of the defendant in this class of cases. Some of them hold that an action is based upon negligence alone; others that it may be founded on an implied warranty; and still others that, where an implied warranty exists, it does not extend to third parties. * * * The question whether an *assumpsit* under a contract of implied warranty of fitness, &c., may be maintained is, in many instances, so closely related to the question of negilgence that the decisions are not always susceptible of clear classification. In 26 *C. J.* 783, it is stated that the general rule is that in all sales of food or beverages for immediate consumption by a dealer there is an implied warranty of fitness or wholesomeness for the consumer."

"There is, undoubtedly, a very substantial weight of authorities holding that an implied warranty in cases of this character will lie. *Crigger* v. *Coca Cola Bottling Co.,* 132 *Tenn.* 545; 179 *S. W. Rep.* 155; *L. R. A.* 1916B; 877 *Ann. Cas.* 1917B, 572; *Boyd* v. *Coca Cola Bottling Works,* 132 *Tenn.* 23; 177 *S. W. Rep.* 80; *Craft* v. *Parker, W. & Co.,* 96 *Mich.* 245; 55 *N. W. Rep.* 812; 21 *L. R. A.* 139; *Truschel* v. *Dean,* 77 *Ark.* 546; 92 *S. W. Rep.* 781; *Bunch* v. *Weil,* 72 *Ark.* 343; 80 *S. W. Rep.* 582; 65 *L. R. A.* 80; *Nelson* v. *Armour Pkg. Co.,* 76 *Ark.* 352; 90 *S. W. Rep.* 288; 6 *Ann. Cas.* 237; *Walter* v. *U. Grocery Co.,* 51 *Utah* 565;

172 *Pac. Rep.* 473; *L. R. A.* 1918E, 519; *Catani* v. *Swift & Co.,* 251 *Pa.* 52; 95 *Atl. Rep.* 931; *L. R. A.* 1917B, 1272, is very generally cited in support of this conclusion."

But whatever may be the holding of other jurisdictions it is clearly the law of our state that a manufacturer of a commodity, canned, bottled or sealed, in a container or wrapper, is under duty to an ultimate consumer to exercise reasonable care in the production of the same, regardless of lack of contractual relationship between the consumer and the manufacturer. Recovery in such instances is based on negligence. The following cases are illustrative. *Tomlinson* v. *Armour & Co.,* 75 *N. J. L.* 748, suit against manufacturer based on negligence—diseased ham. *Wilson* v. *Deschner,* 11 *N. J. Mis. R.* 609; 167 *Atl. Rep.* 670, suit against a manufacturer based on negligence—nail in roll; reversed on other grounds. *Carbone* v. *California Packing Co.,* 12 *N. J. Mis. R.* 209; 169 *Atl. Rep.* 866, negligence basis of action, suit against defendant, manufacturer, who put up a can of peaches containing medicated gauze. *DeGroat* v. *Ward Baking Co.,* 102 *N. J. L.* 188; 130 *Atl. Rep.* 540, suit against manufacturer based on negligence—bread containing glass. *Rudolph* v. *Coca Cola Bottling Co.,* 4 *N. J. Mis. R.* 318; 132 *Atl. Rep.* 508, action against manufacturer based on negligence—piece of leather in coca cola. *Sheehan* v. *Menkes,* 8 *N. J. Mis. R.* 867; 152 *Atl. Rep.* 326, mince meat sold by H. J. Heinz Company to Menkes and used by the latter to make pie—judgment against Heinz, manufacturer, sustained on the theory of negligence. To the same effect is *Corin* v. *S. S. Kresge Co.,* 10 *N. J. Mis. R.* 489; 166 *Atl. Rep.* 291; *affirming,* 159 *Atl. Rep.* 799, in which a restauranteur prepared cole slaw, ingredients of which it purchased from others. Defendant held liable on the theory of negligence. See, also, *Nisky* v. *Childs Co.,* 103 *N. J. L.* 464; 135 *Atl. Rep.* 805. In *Jones* v. *Mt. Holly Water Co.,* 87 *N. J. L.* 106; 93 *Atl. Rep.* 860, defendant supplied water to plaintiff which caused paratyphoid disease. Defendant was held for negligence.

In all of the aforesaid cases, except perhaps the last, the plaintiff merely proved the presence of a foreign, deleterious

substance in the article supplied, or illness caused therefrom, and this was held to be sufficient to create an inference of negligence.

And so this right of recovery, irrespective of the lack of contractual relationship between the parties, is permitted, under the cases of our state, against a manufacturer of an article, though not inherently dangerous but which may become dangerous when put to the use for which it was intended. Such manufacturer owes to the public the duty of employing care, skill and diligence in its manufacturer and of using reasonable diligence to see that it is reasonably fit for the purpose for which it was intended. The following cases are typical.

In *Taylor* v. *Berner,* 7 *N. J. Mis. R.* 597, reversed on other grounds (106 *N. J. L.* 469), explosion of a vichy bottle—suit against a bottler who, as part of his business filled the bottle (but not against the manufacturer) it was held, on the question of negligence, that the doctrine of *res ipsa loquitur* applied.

In *Heckel* v. *Ford Motor Co.,* 101 *N. J. L.* 385; 128 *Atl. Rep.* 242, following the famous case of *McPherson* v. *Buick,* 217 *N. Y.* 382; 111 *N. E. Rep.* 1050, decision of Mr. Justice Cardozo, a manufacturer of a tractor was held under a duty to the public to use reasonable care in the manufacture of a machine, though not inherently dangerous, but which may become dangerous when put to the use for which it was intended.

"* * * The breaking or bursting of the pulley coupled with the evidence of a defect therein called upon defendant to show what care it had used in its manufacture. * * * As before stated it was for the jury to determine whether or not there was a defect in the pulley; whether or not the pulley did break or burst because of such defect, and whether the bursting so caused was the proximate cause of injury to the respondent. If the jury found in favor of the respondent upon all of these matters it still was for the jury to say whether the defect could have existed undetected and unknown to appellant if it had used reasonable care in applying

the tests which it was testified were employed by it in the manufacture of the pulley. For these reasons the refusals to nonsuit and to direct a verdict in favor of the defendant were proper." *Hecker* v. *Ford Motor Co., supra* (at *p.* 388).

In *Clark* v. *Standard Sanitary Manufacturing Co.,* 8 *N. J. Mis. R.* 284; 149 *Atl. Rep.* 828, the manufacturer of a porcelain handle for a bathroom faucet was held liable for negligence to one injured when the handle broke in her hand.

In *Martin* v. *Studebaker Corp.,* 102 *N. J. L.* 612; 133 *Atl. Rep.* 384, the proof indicated that a manufacturer of an automobile bought wheels of approved pattern and standard quality from a reputable concern. The Court of Errors and Appeals sustained a judgment on a jury verdict for defendant in a suit based on negligence by a purchaser of a car from a retailer for injuries sustained when the wheel collapsed. It was not doubted, however, that defendant was under a duty to exercise reasonable prudence in making inspections and tests of the wheel in question. For a full discussion of the entire subject-matter see *Tomlinson* v. *Armour & Company, supra.*

There is a further basis of liability totally distinct from the theory of negligence. Liability for personal injuries may be predicated upon a breach of warranty, express or implied, quality and fitness for a particular purpose. So in the case of *Griffin* v. *James Butler Grocery Co., supra,* suit was brought by an injured plaintiff against the vendor and retailer direct, who sold her a can of peaches which caused physical injury. The court sustained a recovery upon an implied warranty, relying upon section 15 of the Sales of Goods act. 4 *Comp. Stat., p.* 4650.

In the last mentioned type of case, however, the warranty inures only for those whose benefit the goods were bought. (*Tomlinson* v. *Armour & Co., supra,* a suit based on negligence but the doctrine of warranty is therein fully discussed.)

In the instant case there was no contractual relationship, privity of contract, between the parties. This, however, does not defeat the plaintiffs' right in the premises, for their action was based on negligence. The addition of the warranty count (3) in our opinion was mere surplusage.

Defendant also contends, substantially, that its proof of the degree of care employed by it in the manufacture of its product, the quality of the ingredients used in its product and the standard treatment thereof to assure its wholesomeness was of such character as to completely exonerate it of any negligence in the premises and thus entitled it to a directed verdict.

We think that this was a fact question and that the proofs, in the instant case, fully justified the result reached by the trial judge.

Judgment is affirmed, with costs.