41 N.J. Super. 213 (1956)
124 A.2d 319
LILLIAN SHEENAN, PLAINTIFF-RESPONDENT,
v.
THE COCA-COLA BOTTLING COMPANY OF NEW YORK, INC., A CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued July 2, 1956.
Decided August 3, 1956.
*214 Before Judges CLAPP, HALL and HEGARTY.
Mr. Joseph I. Bedell argued the cause for plaintiff-respondent (Messrs. Lyness & Bedell, attorneys; Mr. Sam Weiss on the brief).
Mr. Samuel A. Larner argued the cause for defendant-appellant (Mr. Wilbur A. Stevens, attorney).
The opinion of the court was delivered by CLAPP, S.J.A.D.
Plaintiff, while drinking a bottle of Coca Cola, noticed a very bitter taste, discovered a foreign substance in the bottle and became ill. This action ensued. The jury found the defendant, The Coca-Cola Bottling Company of New York, Inc., guilty of negligence, returning a verdict against it for $4,103.47. The appeal brings up questions as to causation, as to the admissibility of certain expert testimony and as to the weight of the evidence.
The foreign substance was a mass of soft dark brown sludge (i.e., a muddy mass) or a brownish prunish-like mass about an inch thick, that, at the time plaintiff discovered it, had plugged the end of the straw through which she was drinking. It looked to her and to several women, *215 fellow employees who were present, like a cigar butt; there was also sediment in the bottle, leaving the bottom very thick and all black. Plaintiff had finished three-quarters of the bottle before she noticed the taste; thereupon she discovered the alien matter in the liquid. One of these employees remarked at the time, "That is going to make you sick." The other employees, jesting over the fact that plaintiff does not smoke, said:
"Gee, her that doesn't smoke and she gets a cigar butt in her coke bottle."
Plainly this was no appetizing morsel.
This episode took place shortly after 6:30 P.M., May 18, 1954. At 7:15 P.M. plaintiff felt pains in her stomach and later vomited (for the first time in her life); thereafter her mouth and throat felt on fire; and a cup of hot water given to her brought out a cold sweat. Subsequently she called a doctor and was sick "at" her stomach all night long. Next morning her throat was very sore, and her lips were swollen and burned; blisters had appeared on the lower and upper lips, one on the corner of the mouth and others around the gums. The blisters went away in a couple of days, except for one which lasted until the end of August. She never before had had a fever sore. Her stomach hurt "like somebody pulling a knife through."
An examination made by her doctor that morning disclosed first and second degree burns of not only the lips, but also the throat and the lining of the mouth. She stayed away from her employment for about ten days at that time (incidentally she had been in the same employment for about 35 years). She also stayed away on June 16 or 17 and June 29 or 30 because her throat bothered her, as a result of the same condition. Stomach complaints continued for more than two months, and X-rays taken at the end of that period revealed at that time an existing gastritis, an inflammation of the lining of the stomach. Since then, she occasionally has had severe pains in the stomach and also has had difficulty in swallowing, a difficulty that took longer *216 to clear up than the gastritis. A green and white spongy matter kept working up out of her throat. Indeed at the time of the trial, in November 1955, she still had a feeling that there was a hair or a thread in the back of her throat, which brought on spells of coughing; this the doctor said is now "subjective," a matter of "nerves." We have detailed these ailments at some length because of the question (considered later) as to the amount of the verdict.
Defendant's first point is that there was no evidence to go to the jury on the issue of causation, and that the trial court should therefore have granted its motions for judgment and dismissal. According to proofs adduced by defendant, the muddy sludge in the bottle had the physical and chemical properties of brown wrapping paper, to which had been applied a starch paste apparently, so that it could be used as gummed paper for the sealing of bundles or cartons. The stuff was found to be "non toxic," "non bacteriological," "almost sterile"; "there was nothing wrong with it." These proofs stand uncontradicted. And so (defendant says or intimates) the implication of deleteriousness, which may be deduced from the proximity existing between the ingestion of the Coca Cola and the symptomology above related (cf. Cassini v. Curtis Candy Co., 113 N.J.L. 91, 94 (Sup. Ct. 1934)), has been eliminated from the case.
But does that end the discussion? Harmless though the substance was, nevertheless from the proofs adduced as to psychosomatic reactions, a reasonable man could say that her ailments originated in the contents of the bottle. The very proximity of events, above stated, can be said to support such a conclusion. Cf. Wilson v. Coca Cola Bottling Co., 3 N.J. Super. 102 (App. Div. 1949); Rudolph v. Coca-Cola Bottling Co., 4 N.J. Misc. 318 (Sup. Ct. 1926). And further support is furnished by testimony of plaintiff's physician who, eliminating all other causes "within reason," attributed her ailments "most probably" to the contents of the bottle, though admittedly he did not know what they were or whether they were deleterious. We might add to the factual picture at this point, while we are considering other causes, that she *217 "always drank coke" and that she had had her dinner at 3:30 P.M. on May 18, 1954.
Proof as to the psychogenic link in this chain of causation was first brought out in the case by defendant itself when it adduced from plaintiff's physician that "there is a probability" that the gastritis "could have been caused by nerves"; that in other words, in the physician's "own personal opinion," a case of nerves probably caused the "upsetting," all originating in "the contents of the bottle, not knowing what she had drunk." A toxicologist, called to the stand by the defendant, developed the point on cross-examination. He said it was a "natural response" for her to become nauseated when she came upon this (as she described the circumstances) "very bitter" taste and then saw the mass that looked like a cigar butt plugged in the end of her straw. (We deal later with the admissibility of this testimony.) The subsequent reactions (the burns, the blisters and the gastritis) were, he said, attributable to "her own sensitivity," "her psychoneurotic responses."
We thus have quite sufficient proofs ascribing the nausea, the burns and the gastritis to what the plaintiff tasted and saw in the bottle and to her ensuing psychogenic reactions. When the toxicologist said of the nausea that it was a "natural response," he apparently had reference to the reactions of a person of "average strength * * * of * * * mind," Ward v. West Jersey & Seashore R. Co., 65 N.J.L. 383, 385 (Sup. Ct. 1900)  that is, a "normal" person, Oehler v. L. Bamberger & Co., 4 N.J. Misc. 1003 (Sup. Ct. 1926), affirmed by an equally divided court, 103 N.J.L. 703 (E. & A. 1927).
Here and below, defendant's sole argument has been this: since the foreign substance was innocuous, it could not have caused plaintiff's ailments; therefore there was no proof of causation, and the motions for judgment and dismissal should have been granted. But, as already demonstrated, there was proof of causation. That being so, the argument fails; and we should not upset the ruling on the motions which were predicated alone on that argument.
*218 Two questions, not raised by defendant, occur to us. One of them is whether the ailments in some part  the burns and possibly the gastritis  are so abnormal a response to the circumstances as to render them, as a matter of law, not a proximate consequence of the circumstances, or, in any event, not actionable. See Restatement of Torts, § 313, comment b, holding that one who
"* * * negligently subjects another to * * * an emotional distress does not take the risk of any exceptional physical sensitiveness to emotion which the other may have unless the circumstances known to the actor should apprise him thereof."
The other question is whether emanations from the harmless foreign substance, in the form of a bitter taste, constitute a physical disturbance sufficient to satisfy a rule laid down by the former Supreme Court. Under that rule recovery is denied with respect to ailments mentally induced unless they are accompanied by or resulting from physical injury. Ward v. West Jersey & Seashore R. Co., 65 N.J.L. 383 (Sup. Ct. 1900); Legac v. Vietmeyer Bros., 7 N.J. Misc. 685 (Sup. Ct. 1929); Cassini v. Curtis Candy Co., 113 N.J.L. 91, 93 (Sup. Ct. 1934) (holding that where a plaintiff, biting into a candy, eats a worm "or the emanations from it," illness thereby caused is actionable; aliter if he bites next to the worm and its emanations, and the sight makes him sick); see Spiegel v. Evergreen Cemetery Co., 117 N.J.L. 90, 94 (Sup. Ct. 1936); Tuttle v. Atlantic City R. Co., 66 N.J.L. 327, 331 (E. & A. 1901). This rule has been severely criticized. Prosser, Torts, 176 et seq. (2d ed.). See, further, Restatement, Torts, § 313; cf. Hall v. Doremus, 114 N.J.L. 47, 51 (Sup. Ct. 1934). Although New Jersey cases have dealt only with physical disturbances which produce some physical injury, nevertheless a slight injury satisfies the rule. Porter v. Delaware, L. & W.R. Co., 73 N.J.L. 405, 406 (Sup. Ct. 1906); Kennell v. Gershonovitz Bros., 84 N.J.L. 577, 579 (Sup. Ct. 1913); Smith v. Montclair Brown & White Cab Co., 6 N.J. Misc. 57, 59 (Sup. Ct. 1928); Katz v. Taborowsky, 7 N.J. Misc. 311, 312 (Sup. Ct. 1929); *219 Clayton v. Jersey Central Power & Light Co., 19 N.J. Super. 546, 554 (App. Div. 1952), speaking of "physical contacts." These questions are not presented by defendant here, doubtless because they were not raised below; and it would therefore be quite improper for us to deal with them.
Defendant's second point is that the trial court erred in permitting a toxicologist (not a physician) to testify as to plaintiff's psychoneurotic responses and as to the causal connection between the contents of the bottle and her ailments. The contention is that he was not qualified to testify on those subjects. It is first to be observed that the court in its charge instructed the jury to strike from their minds all references in the testimony to the effect that plaintiff suffered from a psychoneurotic condition. Even more significant, however, was the testimony adduced by defendant's attorney himself from plaintiff's physician, establishing (as more fully stated above) the probability that her gastritis could have been caused by nerves.
The same attorney later asked the above-mentioned toxicologist whether the contents of the bottle could possibly have caused second degree burns. He received an answer to this effect (it was most obscurely stated): no, except that a person might, by reason of his own sensitivity, obtain from the contents a reaction amounting to a burn. Thereafter on cross-examination it was developed that by sensitivity the witness had reference to psychoneurotic responses, that the burns so produced would be only of the first and second degree and that what plaintiff drank from the bottle could, depending on her psychosis (and notwithstanding the innocuousness of its contents), bring about serious gastric disturbances. The objection now made, that the toxicologist was not qualified to testify with respect to psychogenic matters, was first raised in connection with a later question, and only at a subsequent time was a motion made to strike the testimony theretofore admitted. We cannot say that at that posture of the case the trial court abused its discretion in its refusal to strike the testimony theretofore and thereafter admitted. Nor can we say, in particular, that prejudicial *220 error was committed by the admission of the toxicologist's statement, that plaintiff's nausea was a natural response to that which she tasted and then saw; having regard for this matter of prejudice, we may observe that such a reaction is not so very far removed from common experience.
Defendant's third point, that the verdict is against the weight of the evidence on the issue of liability, brings us back to the question of causation. Defendant again overlooks the proofs adduced by its own attorney from plaintiff's physician as to the probability that the gastritis was caused by nerves.
The final question goes to the amount of the verdict. On defendant's motion below for a new trial, the trial court directed a new trial as to damages only unless plaintiff would consent to accept $2,603.47 in place of the jury's verdict of $4,103.47. The plaintiff gave her consent. But now it is claimed by defendant that this $2,603.47 is also excessive.
Plaintiff lost no income except $25 which, added to bills for doctors, X-rays and drugs, total $103.47. Is $2,500 excessive compensation for her suffering? She said (we think quite significantly):
"I was sick all night [May 18] and I was sick the next day. In fact, I was sick for the next couple of days. The doctor said he didn't know what he was going to do."
Plainly the worst of it was over in two days. She remained away from work 12 days, all told (but there is no proof that she even stayed at home then), she made eight visits to the doctor (including one right before the trial), had undoubtedly gastritis and stomach pains for more than two months, a blister in the corner of her mouth for three months and now a "hair" in the back of her throat. Proof as to ailments mentally produced should always be satisfactory, because of the very real danger that they may be feigned. Prosser, supra, 177, 179; Ward v. West Jersey & Seashore R. Co., 65 N.J.L. 383, 386 (Sup. Ct. 1900). We think $2,500 is clearly and unequivocally excessive.
*221 But though the jury erred, still we have a conviction that the error did not affect its determination of the other issues. Gardner v. Rosecliff Realty Co., 41 N.J. Super. 1 (App. Div. 1956). Indeed, the trial judge was of the same mind, for he directed a new trial just as to damages on a conditional basis (as above related), but only after stating this: a new trial will not be limited to damages except where the error touches merely the amount of the verdict, where the issue as to damages is fairly separable from the other issues in the case and where it appears that the interests of justice will be served by a partial new trial. Moreover, in connection with the separability of the determinations on these issues, it is perhaps worth noting that in this case the jury first brought in a verdict for the plaintiff without fixing the damages and then, after further instructions, brought in a separate verdict as to the amount of the damages.
Reversed, and new trial ordered as to damages. No costs allowed.