51 N.J. Super. 313 (1958)
144 A.2d 1
BEVERLY MIGLIOZZI, ETC., ET AL., PLAINTIFFS-RESPONDENTS,
v.
SAFEWAY STORES, INC., ET AL., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 9, 1958.
Decided July 10, 1958.
*315 Before Judges STANTON, HALL and GAULKIN.
Mr. Francis Sorin argued the cause for plaintiffs-respondents.
Mr. Sheldon Schiffman argued the cause for defendants-appellants (Mr. Wilbur A. Stevens, of counsel).
The opinion of the court was delivered by GAULKIN, J.A.D.
Plaintiff Beverly Migliozzi, an infant four years old at the time of the alleged happening, sued in the district court for injuries sustained as a result of drinking Coca-Cola containing a foreign substance.
The trial court, sitting without a jury, gave judgment to the infant for $300 against the Coca-Cola Bottling Co. The infant's father had sued also for medical expenses, and for the loss of the infant's services, but neither the father nor the doctor appeared in court, and his claim was dismissed. We observe that the judgment of the court below does not appear in the appendix, R.R. 1:7-2, 2:7-1.
Defendant appeals upon two grounds: that the lower court erred in denying defendant's motion to dismiss the infant's claim, and that the verdict was contrary to the weight of the evidence as to damages.
The only witness for the plaintiff was her mother. The infant plaintiff was not in court. The mother testified that she opened the bottle of Coca-Cola and gave it to her daughter to drink at about 6 P.M. of the day she bought it; that the child had not had anything to eat or drink since noon of that day; that after the child drank about half the contents she said "it tastes funny," and threw up. The mother then noticed foreign particles "on the top of the soda." The bottle and its remaining contents were received in evidence, and the record shows that counsel and the judge saw and commented upon the foreign matter. The defendant *316 had had the foreign matter analyzed before the trial, but produced no testimony of the result. Indeed, it appears from the colloquy of counsel at the trial that defendant had refused to disclose the report to the plaintiff before trial.
The foreign matter was not described by any one other than as "particles." The judge said "* * * it was dirty. It has particles in it." He called it "an ugly sight." Counsel for the plaintiff, during his closing argument, pointed out without contradiction "It's a messy substance * * * as we see it, it settles to the bottom."
Defendant does not challenge the finding that there was foreign matter in the bottle, and in its brief concedes "arguendo * * * that the presence of a foreign substance in the bottle created a prima facie case of negligence." See Annotation, "Presumption or prima facie case of negligence based on presence of foreign substance in bottled or canned beverage," 52 A.L.R.2d 117 (1957).
What defendant does contend, under its first point, is that since "the plaintiff * * * did not have the contents of the bottle analyzed. There was no * * * odor coming from the bottle. There was no testimony from any doctor * * *," there was not sufficient proof that the foreign substance was harmful, or that it caused the infant any injury, or that the vomiting was due to it, and therefore judgment should have been entered for defendant.
It is doubtless true that the burden is upon the plaintiff to prove that the foreign substance caused the claimed injury, and it is not the burden of the defendant to prove that the illness was due to other causes. Piscatore v. V. La Rosa & Sons, Inc., 123 N.J.L. 364 (E. & A. 1939). Cf. Jones v. Mount Holly Water Co., 87 N.J.L. 106 (Sup. Ct. 1915). However, when the presence of a foreign substance is established, and there is testimony of gastric disturbance following immediately upon ingestion, the trier of the facts may infer therefrom that the gastric disturbance was caused by the foreign substance, without further proof of the identity of the foreign substance or its harmfulness. Wilson v. Coca-Cola Bottling Co., 3 N.J. *317 Super. 102 (App. Div. 1949); and see Annotation, "Infected or tainted condition of milk or other food, or contamination in water, and its causation of the sickness of the consumer, as inferable from such sickness," 130 A.L.R. 616 (1941). It is not always essential that the substance be identified. Piscatore v. V. La Rosa & Sons, Inc., 121 N.J.L. 288 (Sup. Ct. 1938), affirmed 123 N.J.L. 364 (E. & A. 1939); Griffin v. James Butler Co., 108 N.J.L. 92 (E. & A. 1931); Amabile v. Kramps, 121 N.J.L. 219 (Sup. Ct. 1938). Cf. Cassini v. Curtis Candy Co., 113 N.J.L. 91 (Sup. Ct. 1934). In the following cases the substance was identified, but in and of itself it was harmless, and there is no mention in the reports of the cases that there was expert testimony that it had turned harmful. Sheenan v. Coca-Cola Bottling Co. of New York, 41 N.J. Super. 213 (App. Div. 1956); certification denied, 22 N.J. 268 (1956); Wilson v. Coca-Cola Bottling Co., supra, a bottle cap; Carbone v. California Packing Co., 12 N.J. Misc. 209, 169 A. 866 (Sup. Ct. 1934), a medicated finger bandage; Rudolph v. Coca-Cola Bottling Co., 4 N.J. Misc. 318, 132 A. 508 (Sup. Ct. 1926), a leather suspender strap.
In the case at bar, the testimony was that the child had not eaten or drunk anything for six hours prior to ingesting the Coca-Cola; that she was accustomed to drinking Coca-Cola; that immediately upon drinking this potion, with the particles in it, she said "it tastes funny" and threw up. It seems to us that from these facts the trier of fact had the right to infer that the foreign substance caused the gastric disturbance which followed immediately after the drinking. Wilson v. Coca-Cola Bottling Co., supra. Cf. Piscatore v. V. La Rosa & Sons, Inc., 123 N.J.L. 364 (E. & A. 1939).
However, we are not satisfied that the evidence justified the inference that the subsequent gastric disturbances, testified to by no one but the mother, were caused by the drink.
The drink was swallowed January 5 or 15, 1957 (the testimony is not clear as to the date). The mother testified *318 that she took the infant to a doctor, who gave her medicine, but "for a good couple of weeks" she kept throwing up; that the doctor treated her daughter "three months straight * * * maybe twice a week," and thereafter less than twice a week "until about May." The mother testified that after May 1957, and up to the trial on March 4, 1958 (about 14 months after the drink), the child still "doesn't eat right and she's always getting that nauseous feeling * * * In fact, just about a week ago she was home from school with it." The mother said the child had lost 12 days from school over the 14-month period, "sick to the stomach most of the time."
The trial judge obviously did not accept all of the mother's testimony, for if he had, the judgment would have been more than $300. Assuming her testimony was competent, which we think it was not, there is no basis for accepting part of it, and discarding the rest. In our view, he should not have accepted any of the mother's testimony as to her daughter's illness after the date when she drank the Coca-Cola. What the doctor found, what he treated the child for, how, and for how long, and the relation between the drink and her ailments, were all matters about which only the doctor was competent to testify.
In the Wilson case, supra, the doctor did not testify, but an examination of the record in that case shows the plaintiff herself did, in sufficient chronological detail to justify the jury in finding that the gastric symptoms, which lasted seven days, were caused by the drink. Miss Wilson testified that she drank the Coca-Cola at 10 A.M. during the morning "coffee break"; ate or drank nothing until lunch hour; at the lunch hour felt too ill to eat and ate nothing; at supper-time she attempted to eat but threw up; the next day she had a headache, pains in her stomach, felt very weak, and ate nothing all day; the third day she tried to eat, threw up, and reported to the plant nurse; the fourth day she went to a doctor, after which she stayed in bed; was unable to eat anything until the seventh day, when she was able to have tea and dry toast. Thereafter she started to eat solid foods, *319 but she was unable to return to work for a total of 2 1/2 weeks. Her testimony, upon direct and cross, showed one continuous, unbroken episode beginning with the drinking of the Coca-Cola and ending with the return to work. It may be unfortunate that, in the instant case, the child was too young to testify, but that does not permit us to guess as to what she might have testified to had she been able to. Nor can we accept a hypothesis of psychosomatic disturbance, as is in the Sheenan case, supra, in this four-year child. Even the mother herself did not put the claimed gastric disturbances upon that basis.
Under all of the circumstances, it is our conclusion that the judgment of the court below should have been limited to damages for the first episode of vomiting. Consequently, the judgment of $300 is excessive. Therefore the judgment is reversed, so that there be a new trial as to damages only, unless the plaintiff, within 20 days, consents in writing to accept $50 in place of the present judgment. No costs.