Lawrence **BUSHMAN** and Gwenyth Bushman, Appellants,

v.

Henry J. **HALM** and United States of America.

No. 85–5289.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit Rule 12(6) Feb. 13, 1986.

Decided Aug. 15, 1986.

Steven L. Kessel, Drazin & Warshaw, P.C., Red Bank, N.J., for appellants.

Thomas W. Greelish, U.S. Atty., and Louis J. Bizzarri, Asst. U.S. Atty., Trenton, N.J., for appellees.

Before HUNTER and SLOVITER, Circuit Judges, and GILES, District Judge*.

## OPINION OF THE COURT

GILES, District Judge.

This appeal from an award of summary judgment in favor of the defendant United States requires us to decide whether, as a matter of law, the district court properly adjudicated plaintiff's [1] tort claims arising out of a head-on motor vehicle accident. Plaintiff's recovery is controlled by the terms of the New Jersey Automobile Reparations Reform Act (Act), N.J.Stat.Ann. § 39:6A–1 *et seq.* (West 1973 & Supp.1985). Because we find that plaintiff is not required under New Jersey law to submit expert medical opinion on the element of legal causation to establish a prima facie case of negligence, we conclude that a genuine issue of material fact exists as to the causal nexus between the accident and the alleged injury. We therefore vacate the judgment for defendant and remand for further proceedings consistent with this opinion.

### I.

On December 20, 1977, a truck driven by plaintiff, Lawrence Bushman, collided with a United States Postal Service jeep driven by one of its employees, Henry Halm. On March 29, 1979, Bushman and his wife filed

---

* Honorable James T. Giles, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. In this opinion, the Bushmans will be referred to in the singular as they refer to themselves in their brief.

suit against the United States Postal Service and Halm seeking compensatory damages under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 *et seq.* (1982),[2] for the husband's personal injuries, the wife's loss of consort and property damage to the truck.[3]

■ Without filing supporting evidentiary materials, *see* Fed.R.Civ.P. 56(b), the United States moved for summary judgment on two grounds.[4] It argued that Bushman had only soft tissue injuries and, as such, his injuries were not permanent within the meaning of the Act. The government reasoned that since his medical expenses were below the $200.00 threshold established under the Act, the case came within the scope of the Act's tort exemption. *See* N.J.Stat.Ann. § 39:6A–8 (West 1973 & Supp.1985). The United States also argued that plaintiff had failed to establish explicitly a causal nexus between Bushman's alleged permanent injuries and the accident.

Plaintiff attempted to rebut defendant's summary judgment motion with evidentiary support. The proffered evidence consisted of Bushman's sworn affidavit setting forth his recollection of the accident and his resultant injuries as well as a medical report in letter form prepared by his treating physician. Dr. Ralph Kuhn, an orthopaedic surgeon.

As a result of the collision, plaintiff's knees struck the dashboard of his truck causing him pain and restricting his mobility. (App. at ¶ 2). He received hospital emergency room treatment immediately after the accident. X-rays were taken of his left knee and a suture was used to mend a laceration of that same knee. (*Id.*). As to the permanency of the injury. Bushman contended that he has suffered daily pain in both legs since the date of the accident and can no longer maintain his previous level of physical activity. (*Id.* ¶¶ 3, 4, 5). Moreover, plaintiff averred that he had no pain in his knees prior to the accident. (*Id.* ¶ 2).

Dr. Kuhn's report,[5] dated September 11, 1978, by history, substantially confirms

---

2. The FTCA authorizes suits against the United States for compensatory damages for:

 personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred.*

 28 U.S.C. § 1346(b) (emphasis added). This action was duly commenced in accordance with the mandates of the FTCA. *See* 28 U.S.C. § 2675(a) (1982). It is undisputed that plaintiff properly filed the requisite claims with the "appropriate Federal agency," the United States Postal Service, prior to instituting this action. *See* 39 U.S.C. § 409(a), (b) (1982) (FTCA applies with equal force to claims against United States Postal Service.) Plaintiff's claims were administratively denied by letter dated February 27, 1979. Plaintiff then commenced this action in federal court pursuant to 28 U.S.C. § 2671.

3. Prior to the disposition of the Rule 56 motion, the court entered an order dismissing the action against Halm in his individual capacity.

4. Defendant's motion for summary judgment did not address the third count of plaintiff's complaint pertaining to property damage. The complaint for property damage was dismissed with prejudice on February 25, 1985. Plaintiff

filed his notice of appeal on April 17, 1985. Although this appeal was filed more than six years after the October 1979 entry of judgment in favor of the United States on the tort causes of action, there was no final disposition of the entire controversy until February 25, 1985. Accordingly, this appeal from a final order of the district court, *see* 28 U.S.C. § 1291 (1982), was timely filed and our review of the 1979 district court ruling on the government's Rule 56 motion is proper. Fed.R.App.P. 4(a)(1). *See also Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945); Fed.R.Civ.P. 54(b).

5. It is difficult to determine what weight, if any, the district court gave to Dr. Kuhn's September 11, 1978, medical report in deciding the Rule 56 motion. However, this report, made part of the record, purported to demonstrate a causal link between the accident and an identifiable, ongoing injury. In finding that there was no evidence of an objectively identifiable, ongoing injury, the district court failed to address the treating physician's letter which contains his clinical findings and plaintiff's historical account of his injury. *See* Fed.R.Evid. 803(4) (patient's past and present symptoms along with statements pertaining to causation are admissible to extent they bear upon treatment); 3 D. Louisell & C. Mueller, Federal Evidence §§ 388–

Bushman's affidavit testimony that both of his knees were injured as a result of the collision with defendant's jeep. Upon his first examination on December 22, 1977, just two days after the accident, Dr. Kuhn found "mild tenderness" around the right knee, particularly in the area of the suture. (*Id.*). Swelling in the soft tissues of the left knee with "pain on palpitation medially" was also determined. Dr. Kuhn diagnosed contusions of both knees and, additionally, a sprain of the left knee. On December 22, 1977, Bushman was given crutches, an ace bandage for his left knee, and pain medication.

Bushman was again examined by Dr. Kuhn on February 23, 1978. At that time, he found no clinical evidence of physical injury, but recorded plaintiff's subjective complaints of residual pain emanating from both knees. Bushman was advised to continue with self-administered heat treatments and exercises and was prescribed anti-inflammatory medication. On May 11, 1978, he was seen again by Dr. Kuhn in a follow-up visit. At that time, Bushman complained of pain upon bending at the knees. Plaintiff was told to continue exercising using an ace bandage for support.

■ In a letter opinion,[6] the court below found from this record that Bushman's soft tissue injuries were purely subjective in nature and not obviously related to the accident. Referencing substantive law of the situs of the accident,[7] the court applied what it referred to as "established" New Jersey judicial precedent for the proposition that expert testimony on the issue of causation is a prerequisite to recovery where a plaintiff's "pain and suffering is subjective and not obviously related to an identifiable injury." The court opined that Bushman had not presented any evidence of medical opinion showing "causation between the accident and plaintiff's physical complaints." Concluding that objective expert evidence on the issue of causation was absent, the district court granted summary

89 (1979 & Supp.1985) (physician can testify regarding inadmissible data on the issue of medical opinion and causation).

Dr. Kuhn's initial letter-report was not in affidavit form nor authenticated as required by Rule 56(e). *See Anthuis v. Colt Indus. Operating Corp.,* 789 F.2d 207, 212 n. 4 (3d Cir.1986); *accord Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 161, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970) (courts' preference for sworn testimony). However, the Supreme Court, in *Celotex Corp. v. Catrett,* —— U.S. ——, ——, 106 S.Ct. 2548, 2552, 81 L.Ed.2d 265 (1986), ruled that in meeting the issues raised by a Rule 56 motion, the nonmoving party is not obligated to produce rebuttal evidence which would be admissible at trial. *Id.;* —— U.S. at ——, 106 S.Ct. at 2554 (White, J., concurring). *See also In re Japanese Electronics Products Litigation,* 723 F.2d 238, 258 (3d Cir. 1983), *rev'd in part on other grounds sub nom., Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* —— U.S. ——, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (reviewing court may consider any material in the record in *whatever form* ).

On remand, the district court should articulate its treatment of the September 11, 1978, medical report.

6. The government's motion was denominated as a motion for judgment on the pleadings or, alternatively, for summary judgment. Because matters outside the pleadings were submitted, the trial court properly treated defendant's motion under Fed.R.Civ.P. 56. In such circumstances, it is of moment that the letter opinion was drafted without the benefit of oral argument. Letter from R. Olkawitz to S. Mrvos, filed June 10, 1985; *see* Fed.R.App.P. 10(a). Pursuant to Fed.R.Civ.P. 78, a hearing may well have served to clarify the issues and to have effected a different result. However, whether the district court erred in not setting this motion down for oral argument under the facts presented cannot be determined from the available record. *See Cowgill v. Raymark Indus., Inc.,* 780 F.2d 324, 329 (3d Cir.1985).

7. The district court was correct in looking to the substantive law of New Jersey since compensatory damages sought under the Act must be assessed according to the "whole" law of the state where the tort occurred when that law is also that of the forum state. 28 U.S.C. §§ 1346(b), 2674; *e.g., Richards v. United States,* 369 U.S. 1, 12–16, 82 S.Ct. 585, 592–95, 7 L.Ed.2d 492 (1962); *Leeper v. United States,* 756 F.2d 300, 303 (3d Cir.1985); *see* note 1, *supra.* Here, the alleged negligence occurred entirely within the state of New Jersey. Therefore, to succeed in this action, Bushman must show that the United States would be liable as a private person under a tort theory recognized by New Jersey courts. *See Merklin v. United States,* 788 F.2d 172, 173 (3d Cir.1986).

judgment in favor of defendant on all counts.[8]

Plaintiff filed a motion for reconsideration of the order granting summary judgment, submitting what he viewed as new and material evidence supporting a finding of permanent injury. This additional proof was a letter dated November 29, 1979, from Dr. Kuhn. The report as submitted addressed only the question of permanency, an issue not reached by the trial court. Dr. Kuhn stated that Bushman had intermittent subjective pain in his calves. Although Dr. Kuhn suggested that this condition may be permanent, he made no reference to a correlation between the subjective complaints of calf pain and the accident. The court denied the motion for reconsideration by order without opinion.[9]

## II.

A trial court, being the court of first resort, has a unique familiarity with the underlying facts and, consequently, the merits of a claim. This is particularly true during pretrial proceedings. However, because summary judgment is a "drastic remedy" that prevents a claimant from presenting his cause of action to a jury of his peers, *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981) (citations omitted), the trial court must remain cognizant of the dispassionate evaluation required when reviewing a motion pursuant to Fed.R.Civ.P. 56.

On appeal from an order granting summary judgment, this court exercises plenary review. In re *Japanese Electronics Products Antitrust Litigation*, 723 F.2d 238, 257 (3d Cir.1983), *rev'd in part on other grounds sub nom. Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, —— U.S. ——, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Our standard of review is identical to the test the district court was to apply when ruling on plaintiff's Rule 56 motion. *See, e.g., Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Specifically, we must review the record to determine whether the district court properly concluded that "no genuine issue as to a material fact remain[ed] for trial, and that [defendant] was entitled to judgment as a matter of law." *Id.* (brackets added). *Accord Celotex Corp. v. Catrett*, —— U.S. ——, ——, 106 S.Ct. 2548, 2550, 81 L.Ed.2d 265 (1986).

In theory, application of the basic tenets of judicial review under Rule 56 is ostensibly simple. Plaintiff's allegations as to the accident and attendant injuries must be taken as true, even if in conflict with those of the moving party. *See Goodman*, 534 F.2d at 573, *quoted in Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985). Any inference drawn from the underlying facts contained in the evidentiary sources must be viewed in a

---

**8.** The district court did not address the loss of consortium claim. Because it is wholly derivative from the underlying negligence cause of action, it was necessarily dismissed with the grant of summary judgment. *See Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 437–38 (3d Cir.1986) (if wife's claim for loss of consortium viewed as tort cause of action, no recovery where husband's tort causes of action barred).

**9.** The December 31, 1979, motion for reconsideration was correctly treated as a motion under Rule 59 to alter or amend judgment. (App. at 8). The district court exercised its discretion to deny plaintiff's motion. *See* Fed.R.Civ.P. 59. In general, the appropriate standard of review for a motion to reconsider is whether there has been an abuse of discretion. *Koshatka v. Philadelphia Newspapers, Inc.*, 762 F.2d 329, 333 (3d

Cir.1985); *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122–23 n. 5 (6th Cir.1982). However, to the extent the decision to deny a Rule 59 motion is based upon the interpretation and application of a legal precept, our review is plenary. *Koshatka*, 762 F.2d at 333.

In the instant case, plaintiff's appeal is taken from the October 16, 1979, order granting defendant's motion for summary judgment. Although both parties discuss the motion for reconsideration and refer to the evidence attached thereto in their respective briefs, such evidence was not before the lower court upon initial review. This appeal was taken from the order granting summary judgment and not from the order denying the motion for reconsideration. Therefore, the November 29, 1979, letter from Dr. Kuhn will not be considered on appeal.

light most favorable to plaintiff. As recently emphasized by this court, a district court's resolution to draw its own inferences from the evidence submitted is irrelevant. *Graham v. F.B. Leopold Co., Inc.,* 779 F.2d 170, 173 (3d Cir.1985). Rather, the appropriate judicial inquiry under Rule 56 is whether, "from the evidence available at the time of the motion's disposition, *a jury* [c]ould reasonably have inferred [either directly or circumstantially] that [plaintiff's injuries resulted from the accident]." *Id.* (emphasis and brackets added); *Anderson v. Liberty Lobby, Inc.,* — U.S. —, —, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

▮ In determining whether there exists a genuine and material issue for trial, the trial court must apply a standard which mirrors the criteria for a directed verdict under Fed.R.Civ.P. 50(a). *Anderson,* — U.S. at —, 106 S.Ct. at 2511; *Celotex,* — U.S. at —, 106 S.Ct. at 2552. Under a motion for directed verdict, plaintiff need only present evidence from which a jury *might* return a verdict in his favor *under the governing law. Anderson,* — U.S. at —, 106 S.Ct. at 2511. For a court to conclude that a jury could reasonably find for movant or nonmovant, it must be aware of the legal standards that govern the jury's determination. *Id.* The district court must view the record evidence through the schematic light cast by "the prism of the substantive evidentiary burden." *Id.* at —, 106 S.Ct. at 2513. The court may not grant summary judgment where the nonmoving party has made "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* — U.S. at —, 106 S.Ct. at 2552.

▮ In this negligence action, claimant must prove by a preponderance of the evidence that the failure of defendant to conform to the applicable standard of conduct was the legal cause of the harm which he suffered. *Botta v. Brunner,* 26 N.J. 82, 90, 138 A.2d 713, 717 (1958); *see generally Restatement (Second) of Torts* §§ 328A(c),

465(1) (1965) (factual and legal causation essential elements of negligence action). Where there can be no two factual conclusions, or where there is some applicable rule of law decisive of the issue, it is the function of the court to determine whether a defendant's conduct is the legal cause of plaintiff's harm. *Restatement (Second) of Torts* §§ 328B(a), (e), 434(1)(a), (c). However, in any case where two conclusions may be reached on the issue of causation after the application of controlling precedent, the issue must be left to the jury. *Id.* §§ 328C(c), 434(2)(a).

Here, the district court limited its holding to a single ground: the failure of plaintiff to carry the ultimate burden of persuasion on the issues of factual and legal causation. The court concluded that Bushman's pain and suffering was supported by subjective evidence only. Since his injuries were not obviously related to an identifiable negligent event, the testimony of a medical expert was required.

In reaching its conclusion, we find that the trial court erroneously relied upon what it viewed as the controlling precedent set forth in two New Jersey Superior Court cases, *Kelly v. Borwegen,* 95 N.J. Super. 240, 240–41, 230 A.2d 532, 534 (1967) and *Menza v. Diamond Jim's, Inc.,* 145 N.J.Super. 40, 46, 366 A.2d 1006, 1009 (1976). In *Kelly,* plaintiff testified that she sustained immediate, identifiable injuries to her ribs arising from a car accident. As to this particular injury, the court found that plaintiff was entitled to recover damages. 95 N.J.Super. at 240–41, 230 A.2d at 534. The injury was clearly related to an identifiable event—the accident. Kelly's testimony, however, reflected an equivocal and purely subjective claim for permanent injury to her chest and back that caused her "difficulty in sleeping, walking, climbing steps and breathing." *Id.* at 242, 230 A.2d at 533. Plaintiff's treating physician did not provide any testimonial evidence to support her subjective claims of related, permanent injury. *Id.* In reversing the jury's damage award the court expressed concern over possible juror error: 1) plaintiff had

claimed permanent injuries without any objective expert evidence to protect against a lay jury's award based on purely speculative testimony; and 2) the jury might have unwittingly commingled damages based solely on speculative testimony of ongoing pain and suffering with damages based on rationally-deduced inferences drawn from basic facts adduced through plaintiff's own testimony. In reviewing the particular facts of the case, the New Jersey Superior Court went on to hold that where pain and suffering is alleged to have occurred for a substantial period of time following an accident, is unsupported by *any* medical testimony, and is not a logical consequence of an identifiable injury, *expert medical opinion* is required to prove causation. *Id.* at 244, 230 A.2d at 534.

Subsequently, a different panel of the same court decided *Menza v. Diamond Jim's, Inc.*, 145 N.J.Super. at 46, 366 A.2d at 1008–10. There, plaintiff testified that she developed chest pain on her left side after she slipped and fell twenty-one months earlier. The court found plaintiff's testimony as to her chest pain, without more "competent" corroborative testimony, insufficient to allow a jury to infer that it was causally related to the accident. *Id.* The *Menza* court, like the panel in *Kelly*, was concerned about a jury's ability to weigh properly uncorroborated evidence of permanent medical injury which did not logically flow from the alleged negligence.

An analysis of New Jersey case law reveals no general rule that expert testimony is required on the issue of causation in *all* negligence cases. For example, in *Kelly*, the court limited the scope of its holding by stating that " 'where a claimed disability is the natural result of the injuries sustained, the jury may, without expert opinion, find that the injuries caused such disability.' " 95 N.J.Super. at 243–44, 230 A.2d at 534

(citation omitted) (emphasis added). Prior to *Kelly*, the superior court had ruled squarely that "medical testimony is not a legal pre-requisite [sic]" to allow a jury to infer that plaintiff's damages were proximately caused by defendant's negligence. *Wilson v. Coca-Cola Bottling Co. of New York, Inc.*, 3 N.J.Super. 102, 104, 65 A.2d 630, 631 (1949).[10] Rather than enunciating a precise rule to be followed in all cases, *Kelly* and *Menza* are appropriately aligned with cases adhering to a case-by-case analysis used when determining when expert testimony is required to buttress subjective evidence of a condition not readily identifiable with an alleged injury. In each case, the sufficiency and not the weight of the evidence must be measured in terms of the jury's ability to make a rational inference that accident and injury are related. *Kelly*, 95 N.J.Super. at 243, 230 A.2d at 534; *see generally* 2 F. Harper & F. James, Jr., *The Law of Torts* § 20.2, at 1116–17 (1956) [hereinafter cited as Harper & James], *cited in Butler v. Acme Markets, Inc.*, 89 N.J. 270, 283, 445 A.2d 1141, 1147 (1982) (no requirement that expert testify regarding the applicable standard of care in negligence action).

The New Jersey appellate courts' concern over the ability of lay jurors to decide complex causation issues has continued. *See, e.g., O'Connor v. Altus*, 123 N.J.Super. 379, 386, 303 A.2d 329, 332 (1973), *aff'd*, 67 N.J. 106, 335 A.2d 545 (1975) (jury cannot speculate on the causal connection between plaintiff's alleged psychiatric symptoms and the accident). A more recent opinion serves to clarify the applicability of the expert testimony doctrine without disturbing the precedent first crafted some twenty years earlier. In its most recent decision on point, *Devlin v. Johns-Manville Corp.*, 202 N.J.Super. 556, 495 A.2d 495 (1985), the New Jersey Superior

---

**10.** In *Wilson,* proof of causation was limited to plaintiff's testimony that she had become nauseous for a *continuous* two-to-three week period after ingesting Coca-Cola which tasted "funny." *Id.* Cf. *Migliozzi v. Safeway Stores, Inc.,* 51 N.J. Super. 313, 316, 144 A.2d 1, 3–4 (reversing judgment on issue of damages because child's mother and not child nor expert testified as to lengthy period of gastric disturbances caused by ingestion of Coca-Cola. However, court allowed inference that foreign substance caused compensable gastric disturbance that followed *immediately* after the ingestion).

Court held that an asbestos worker who had already contracted an asbestos-related disease from prolonged exposure to asbestos products could testify as to his fear of contracting cancer and consequent emotional distress without the assistance of an expert witness. *Id.* at 563–64, 495 A.2d at 499. It reasoned that the cause and effect relationship between knowledge of an actual enhanced risk and resulting "distress [was] not so esoteric that lay jurors ... require[d] the assistance of experts." *Id.* at 563, 495 A.2d at 499 (brackets added). The court distinguished a plaintiff's attempt to correlate the element of fear, a purely subjective state of mind, with a particular medical or "somatic" condition that is not generally accepted as related. The plaintiff in *Devlin* was required to demonstrate that he had developed "cancerphobia," a recognized psychiatric illness derived from exposure to asbestos or other cancer-causing agent, through the introduction of skilled medical expert testimony. The court remarked that purely subjective testimony concerning a condition not commonly related to a particular injury should not reach the jury unless it is supported by medical expert opinion. *Id.* (citing *Kelly*, 95 N.J.Super. at 242–44, 230 A.2d at 534).

■ New Jersey precedent on this issue is consonant with hornbook law that a jury should not be allowed to speculate on the issue of causation. If the question of causal relation is so esoteric that lay minds cannot form any intelligent judgment about it without expert aid an opinion from an expert may be required. Harper & James, *supra* pp. 15–16, § 21, at 1116–17. Such a theory is a rational outgrowth of the legal premise that inferred factual conclusions may be drawn from basic facts only to the extent that logic and human experience indicate a probability that certain consequences can and do follow from the basic facts. *See Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir.1981). On the other hand, circumstantial evidence or common knowledge may provide a sound basis from which a causal sequence may be inferred. *See* W. Prosser & W. Keeton, *The Law of Torts* § 41, at 269 (5th ed. 1984).

Harper and James, in their treatise on the law of torts, specifically refer to an example of a medical condition easily identified by lay persons as causally related to an accident: a broken leg sustained in an automobile accident. Harper & James, *supra* pp. 15–16, § 20.2, at 1118. Thus, as a matter of ordinary experience, a particular act or omission might be expected under the circumstances to produce a particular result. If that result has indeed followed, it may be permissible to conclude that a causal relation exists. On the other hand, the correlation between certain conditions such as psychiatric illness and injury may be beyond lay knowledge. Therefore, expert medical testimony should be used to aid their comprehension that a particular condition may arise out of a specific injury. *Id.*

■ Neither the court below nor any prior or subsequent court has provided a technical definition of the term "expert." We conclude that under the law as it stands today, the New Jersey courts would agree that a treating or examining physician may be an expert on causation in a particular case. The New Jersey cases cited by the trial court neither discuss nor require special experts whose only function is to testify on probability theories. At a minimum, a plaintiff should not be expected to defend against a Rule 56 motion by appending the sworn affidavit of an expert in the field of probability. Rather, a physician's report setting forth a qualitative and quantitative description of a common injury is sufficient to pass judicial scrutiny on summary judgment. *See Menza*, 145 N.J. Super. at 46, 366 A.2d at 1009; *Kelly*, 95 N.J.Super. at 242, 230 A.2d at 534; *Migliozzi v. Safeway Stores, Inc.*, 51 N.J.Super. 313, 316, 144 A.2d 1, 3–4 (1958). The cases cited by the district court and discussed herein involve plaintiffs who have alleged conditions such as psychiatric illnesses which cannot be said to be clearly related to the type of injury originally claimed to have been sustained. In the

instant case, there is no alleged injury or condition which would not logically flow from the motor vehicle accident. We conclude that the district court erred in holding that expert testimony was required in this case to prove causation as an element of the tort of negligence.

 Because it improperly applied applicable precedent, the district court erred in discounting plaintiff's affidavit when considering if there was a genuine issue as to the material fact of causation. The court stated that it found "no factual issue existing concerning the subjective nature of plaintiff's [claim of ongoing] *soft tissue* injuries." (App. at 5) (emphasis in original) (brackets added). In so concluding, the court below did not discuss plaintiff's sworn testimony nor reach the issue of whether plaintiff's affidavit was admissible for the purpose of establishing the requisite proof of causation under Fed.R. Civ.P. 56. Bushman's affidavit is admissible under Fed.R.Evid. 701 since: 1) it is based upon first-hand knowledge and observation and 2) it is helpful to a determination of a material fact in issue; that is, the element of causation.[11] *See Maldonado v. Ramirez*, 757 F.2d 48, 50–51 (3d Cir.1985); *Hurd v. Williams*, 755 F.2d 306, 308 (3d Cir.1985). Although the burden under Rule 701 overlaps with that under Fed.R. Civ.P. 56(e)—the requirement of personal knowledge, plaintiff's testimony also meets the more difficult burden under the Federal Rules of Civil Procedure because it sets forth *specific facts* rather than conclusions and demonstrates Bushman's *competency*

to testify about the accident. *Maldonado*, 757 F.2d at 50–51.

By his affidavit, plaintiff testified that his legs were pain-free prior to the accident. However, he stated that he experienced recurrent pain in his knees and surrounding soft tissues after they contacted his truck's dashboard during the accident. (App. at 13, ¶¶ 1–3). Plaintiff has adequately drawn into question the objective nature of his pain and suffering through his own sworn statements. The pain and suffering plaintiff experienced immediately after the accident is directly linked to objectively identifiable symptoms of soft tissue injury verified in the medical evidence. Thus, the lower court erred when it concluded that plaintiff's injuries were "not obviously related to an identifiable injury." (*Id.* at 5).

 While plaintiff's credibility may be challenged by opposing counsel at trial, it is not the function of the court to assume the role of the fact finder upon summary judgment. On summary judgment, a court is concerned with the sufficiency and not the weight of the evidence. Harper & James, *supra* pp. 15–16, § 20.21, at 1118. *See also Japanese Electronics*, 723 F.2d at 258 ("In the civil context that quantum is usually a preponderance of the evidence, and such preponderance cannot be resolved under Rule 56."). Moreover, the sufficiency of any evidence presented on summary judgment is tested only after it has been

---

11. *See Joy Mfg. Co. v. Sola Basic Indus., Inc.*, 697 F.2d 104, 110–11 & n. 22 (3d Cir.1982), *citing* Fed.R.Evid. 602 (Rule 701 reflects general limitation set forth in Rule 602 that, in order to testify, witness must have personal knowledge of the matter); 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 701[01] (1981 & Supp. 1985). The trial court found that Bushman's testimony was inadmissible. In applying what it believed to be the substantive law of New Jersey, the court found that expert opinion testimony was required under what it likely believed was substantive as opposed to procedural law. It is axiomatic, however, that in diversity cases or claims where the jurisdictional statute reveals no intent to supplant the application of federal procedural rules, the admissibility of

nonexpert opinion testimony is governed by the Federal Rules of Evidence. *Joy Mfg.*, 697 F.2d at 110 & n. 22. In the case before us, the question whether the rule applied by the lower court is one of substance or procedure is not one easy to answer. We have discussed without formally deciding that the New Jersey requirement of expert medical testimony in cases where causation is difficult to establish is a matter of substantive law. Nevertheless, if the matter is properly characterized as procedural in nature, the same result would inure. Fed.R. Evid. 701; *see* text at p. 661 *infra*. *Cf. Celotex*, —— U.S. at ——, 106 S.Ct. at 2552 (finding admissibility nonessential element in submissions on behalf of nonmoving party on summary judgment).

reviewed in a light most favorable to plaintiff. *See Gans,* 762 F.2d at 340.

 Defendant has failed to tender any evidence or even suggest that an intervening or prior injury was the proximate cause of plaintiff's pain and suffering. In the absence of any contrary medical evidence, plaintiff's sworn testimony must be taken as true for purposes of creating a fact issue. Thus, after reviewing Bushman's affidavit in a light most favorable to him, it is more probable than not that the accident was the sole proximate cause of his injuries. In a negligence action, where the evidence on an essential element of plaintiff's claim is in dispute and could lead to two permissible inferences in favor of either party, the issue of causation is appropriately resolved by the trier of fact. *Anderson,* — U.S. at —, 106 S.Ct. at 2511-12; *Gans,* 762 F.2d at 341. Hence, after assessing the available proofs in light of the applicable law, the lower court should have determined upon its threshold inquiry that there was a "genuine need for a trial" on the issue of causation. *Anderson,* — U.S. at —, 106 S.Ct. at 2511-12, *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* — U.S. —, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### III.

A decision such as that rendered by the district court in this case could have the potential effect of precluding most, if not all, soft tissue damage cases prior to trial. In soft tissue injury cases, the court must rely in large measure on the subjective testimony of the claimant and on the objective findings of his treating physician. Here, it would be anomalous to impose the extra burden of requiring a plaintiff to introduce expert medical opinion on the issue of causation where his pain and suffering is attributable to an objectively-identifiable injury. Indeed, the issue of causation in an automobile accident claim is the paradigm of a case where lay knowledge provides a sound basis from which a causal sequence may be inferred. For the foregoing reasons, we will vacate the district court's entry of judgment for the defendant on Counts I and II and remand this matter to the district court for further proceedings consistent with this opinion.