**GENERAL SOUND TELEPHONE CO., INC., t/a GST Corporation**

v.

**AT & T COMMUNICATIONS, INC., and AT & T Information Systems, Inc.**

Civ. A. No. 85–5833.

United States District Court, E.D. Pennsylvania.

March 2, 1987.

Kevin T. Fogerty, Allentown, Pa., for plaintiff.

Richard F. Stevens, Allentown, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

Plaintiff General Sound Telephone Company, Inc., t/a GST Corporation, provides telecommunications equipment, systems and services in competition with defendants AT & T Communications, Inc., (ATTCOM), and AT & T Information Systems, Inc. (ATTIS), both subsidiaries of the American Telephone and Telegraph Company (AT & T).

In 1982, plaintiff sold an Omega telephone system to Lawrence Schiff Silk Mills (LSSM) for its Quakertown, Pennsylvania, office. Late in 1983, plaintiff recommended to its customer that two telephone lines connecting LSSM's Quakertown office with its New York sales office be changed. The recommendation was part of GST's ongoing efforts to make the Omega system fully responsive to LSSM's telecommunications needs. Accordingly, GST placed an order with ATTCOM, a company which manages state interexchange companies providing interstate and intrastate interexchange interLATA long distance telephone services, for an alteration to the two lines. The change involved disconnecting existing circuits and replacing them with a different type, known as Off Premises Station (OPS) circuits.

Although ATTCOM anticipated that the conversion would be completed by late February, 1984, it was not. Worse, on March 30, 1984, LSSM's existing circuits were disconnected by ATTCOM, but the replacement circuits were not connected, leaving LSSM without direct lines to its New York office.

Thereafter, GST made repeated requests to have the work completed, but to no avail. In July, 1984, GST and LSSM were told that one of the new circuits was operational and that the other circuit would soon be operable. That information proved to be erroneous. By September, 1984, when

ATTCOM began billing LSSM for the supposedly newly installed circuits, LSSM still did not have the service that had been requested by GST nearly a year before. GST was then obliged to intercede with ATTCOM on behalf of LSSM to correct the error in billing.

Meanwhile, in August, 1984, LSSM's New York office replaced its telephones with an Horizon system from defendant ATTIS, the AT & T subsidiary that sells telecommunications equipment, without soliciting bids from any other company, including GST.

In November, 1984, GST was notified of LSSM's intention to remove the Omega system and replace it with the ATTIS Horizon system, but such was never done. Subsequently, GST cancelled the outstanding order with ATTCOM and ordered the circuits necessary for the LSSM telephone services from International Telephone and Telegraph Company (ITT).

GST filed the instant lawsuit against ATTCOM and ATTIS in October, 1985, as a result of the problems incident to ATTCOM's failure to complete the work on LSSM's telephone lines as ordered by GST. In Count I, GST alleges that ATTCOM tortiously interfered with GST's business relationship with LSSM, causing both the threat to remove the Omega system from the Quakertown office and the purchase of the Horizon system for the New York office. In Count II, GST accuses both ATTCOM and ATTIS of antitrust violations, alleging that ATTCOM's actions were designed to maintain monopoly power and exclude GST from competition in the telecommunications equipment and systems market.

Defendants have moved for summary judgment on both counts, contending that the requisite elements for imposing liability upon the defendants are missing. We shall address the issue of granting summary judgment separately for each count of the complaint, after a brief discussion of principles applicable to summary judgment generally.

It is now quite clear that as to issues on which the nonmoving party bears the burden of proof, summary judgment may be granted where the moving party demonstrates that there is an absence of proof to support the nonmovant's claim or defense. *Celotex Corp. v. Catrett,* 477 U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Stated another way, there is no genuine issue of material fact in dispute if there is insufficient evidence to establish a claim or a defense.

When such an argument is made by the moving party, it is the responsibility of the proponent of the claim or defense to demonstrate to the Court that there is sufficient evidence available from which a jury might return a verdict in his favor under the governing law. *Anderson v. Liberty Lobby,* 477 U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bushman v. Halm,* 798 F.2d 651 (3d Cir.1986).

Moreover, the evidence relied upon must be examined in light of the proponent's evidentiary burden at trial. In other words, the Court is obliged to measure the evidence available to defeat the summary judgment motion against the standard to be applied by the jury at trial, whether it be preponderance of the evidence, clear and convincing evidence, or some other standard imposed by the substantive law which governs the issue. *Id.*

Thus, in determining whether there are factual issues for trial, the Court must examine the record in light of the elements necessary to establish the claim or defense in question and in light of the standard under which the jury will be required to consider the evidence. Only those issues essential to the claim or defense can possibly be material and such issues can be in dispute only if the nonmovant can point to sufficient conflict in the evidentiary sources listed in Fed.R.Civ.P. 56(c) & (e) such that a jury's resolution of the issues is required. The nonmovant may not conjure a genuine issue of material fact by relying upon the allegations of the complaint alone or by relying upon evidence that is "merely colorable" rather than "significantly proba-

tive". *Anderson*, 477 U.S. ——, 106 S.Ct. 2511, 91 L.Ed.2d 212.

On the other hand, the Court is precluded from considering credibility or weight of the evidence and from drawing its own inferences from the evidence. *Id.* at ——, 106 S.Ct. at 2513, at 216. With these principles in mind, we now consider the issues presented by this case.

### Count I—Intentional Interference with Business Relations

Pennsylvania recognizes the tort of intentional interference with prospective contractual relations as set forth in the RESTATEMENT OF TORTS § 766 (1939) and the RESTATEMENT (SECOND) OF TORTS § 766B (1977), *Glenn v. Point Park College*, 441 Pa. 474 (1971); *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466 (Pa.1979). The elements of a cause of action for this claim are:

(1) a prospective contractual relation;

(2) the purpose or intent to harm the plaintiff by preventing the relation from occurring;

(3) the absence of privilege or justification on the part of the defendant; and

(4) the occasioning of actual damage resulting from the defendant's conduct.

*Thompson*, 412 A.2d at 471 (footnote omitted).

Recognizing that the concept of damage to "prospective" contractual relations is difficult to grasp and to apply consistently, the Pennsylvania Supreme Court provided guidance in the *Glenn* case, holding that the first element may be established when it appears "reasonably probable" that the relationship between the plaintiff and the third party would have resulted in an actual contract absent the defendant's interference. The Court went on to describe its holding as "an objective standard which of course must be supplied by adequate proof". 441 Pa. at 481.

██ Plaintiff in this case complains only of not being given the opportunity to bid on providing a telephone system for LSSM's New York office. (See, Brief of Plaintiff in Opposition to Motion for Summary Judg-

ment, Doc. # 11 at 13, 20, 22). Plaintiff contends that the fact that it had placed a telephone system in the LSSM Quakertown office makes it "reasonably probable" that LSSM would have requested a bid from GST for the New York office. In support of its claim, plaintiff has produced the affidavit of Morton Schiff, LSSM president, wherein he stated that the problem with the lines between LSSM's Quakertown and New York offices was the cause of LSSM's failure to *consider* a GST system for its New York office. Significantly, the affidavit does not state that absent that problem, LSSM might have *purchased* a GST system.

Viewed objectively and compared with a similar situation considered by the Pennsylvania Supreme Court in *Thompson Coal*, we cannot conclude that plaintiff would be able to establish the existence of a prospective contractual relationship by relying on such evidence.

In *Thompson Coal*, the Court considered the fact that there was an ongoing relationship between the plaintiff and a third party in the form of an existing year-to-year lease on certain property. The plaintiff argued that it was reasonable to expect the lease to be renewed after it expired, but the Court did not agree that the expectation reached the level of a reasonable probability of renewal, despite the existing business relationship.

Similarly, in this case, plaintiff may have had the hope and expectation of future business from LSSM if it could meet its customer's needs with the Omega system, but we conclude that there is no evidence to establish that GST had a reasonable probability of *obtaining* the specific contract at issue here. Even assuming that a jury might find that ATTCOM's actions precluded LSSM's *consideration* of giving GST an *opportunity to bid* on providing a telephone system for the New York office, such a finding is insufficient to establish the existence of a prospective contractual relation under the law of Pennsylvania which, as noted, requires considerably more than a reasonable probability of a

*chance* to obtain a contract. Moreover, even if we were to reach a contrary conclusion with respect to the first element of this cause of action, it is plaintiff's obligation to demonstrate that it can adduce significant probative evidence as to the remaining elements of the claim as well.

■ The only evidence available as to the second element, intent, and thus the only evidence upon which plaintiff relies to establish intent, is a statement in the deposition of Arthur Weinrach, GST president. (See, Defendants' Memorandum in Support of Summary Judgment, Doc. # 9, Weinrach Deposition pages; Doc. # 11 at 19). Weinrach testified that, "[T]he way these orders were mishandled and circuits never installed, either there was malice of forethought (sic) or there were, these are legal terms which I really can't be using, but from my viewpoint either they were widely, incredibly, inept and incompetent ... Either they were fantastically uncaring and oblivious and negligent or else there was malice of forethought (sic). Its (sic) only one or the other".

Plaintiff's principal officer, who endured the evidently frustrating delays, was not able to testify factually as to the cause of the delay but could merely state his *opinion* that ATTCOM's failure to complete the work ordered was either due to its gross incompetence or to intentional conduct. Discovery has produced no other evidence and, therefore, no facts upon which a jury might find intent.[1]

■ Likewise, since plaintiff has produced no evidence of intent, it cannot maintain its claim for interference with existing contractual relations.[2] Consequently, defendant ATTCOM is entitled to summary judgment on Count I of the complaint.

**Count II—Antitrust**

Plaintiff states specifically and emphatically that it makes no allegation of conspiracy between ATTCOM and ATTIS, both wholly-owned subsidiaries of AT & T. Plaintiff properly notes that in *Copperweld v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984), the Supreme Court held that a parent corporation and its wholly-owned subsidiary are incapable of conspiracy, and thus the Court considered such defendants to be participants in a single enterprise with antitrust liability limited to § 2 of the Sherman Act. That does not mean, however, that there can be no allegations or proof of an internal agreement between sister corporations to engage in concerted activities. The Court held only that such concerted activities are not actionable under § 1 of the Sherman Act or pursuant to a conspiracy theory under § 2.

Here, plaintiff alleges neither concerted activity between ATTCOM and ATTIS nor any facts to indicate that ATTCOM's actions were undertaken to benefit ATTIS. Nevertheless, we presume that plaintiff intends to allege that both defendants were acting, either independently or in concert, for the benefit of a single enterprise.

■ Among the essential elements of a Sherman Act § 2 violation on a theory of attempt to monopolize is specific intent to monopolize a relevant market. *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338 (3d Cir.1975). As proof of this element, plaintiff presents several discrete, undisputed facts and then invites the conclusion that these enumerated events provide sufficient evidence to establish an attempt to

---

1. Plaintiff argues that the Court should not conclude that there is insufficient evidence on the issue of intent without at least a status report on defendant ATTIS's search for records regarding its contacts with LSSM. Whatever impact plaintiff's inability to obtain records may have upon proving the intent necessary to establish a claim under Count II, this argument is irrelevant to our disposition of Count I, in which ATTCOM is the only defendant.

2. Although not explicitly set forth as such, plaintiff GST also purports to state a cause of action under RESTATEMENT (SECOND) OF TORTS § 766A, Intentional Interference with Another's Performance of His Own Contract, claiming that additional expenses and burdens were incurred in the performance of GST's contract with LSSM for the Quakertown telephone system.

 

monopolize claim. Specifically, it is undisputed that ATTCOM failed to timely respond to GST's order for a change of circuits at LSSM's Quakertown offices. It is also undisputed that an ATTIS telephone system was installed in LSSM's New York office during the time GST was seeking to have the proper circuits installed in Quakertown. There is nothing presented, however, to establish a nexus between these events except deposition testimony and affidavits from LSSM officials which indicate that their frustration with the Quakertown situation may have prompted them to purchase an ATTIS system without seeking bids from another vendor. While that may have been the result of ATTCOM's failure to install the new circuits in Quakertown, it does not establish ATTCOM's intent to bring about that result, much less a specific intent to monopolize a relevant telecommunications service and equipment market defined geographically by the plaintiff as the entire country. (See, Plaintiff's Brief in Opposition to Summary Judgment, Doc. # 11 at 26, 27).

■ Moreover, in the absence of allegations that any intent of ATTCOM is attributable to ATTIS or that ATTIS somehow caused ATTCOM to refuse to install the requested circuits, there is even less reason to attribute specific intent to monopolize to ATTIS simply because it may have benefitted from ATTCOM's actions. There are no allegations and certainly no proof that ATTIS did anything except fill LSSM's order.[3]

■ As evidence in support of actual monopolization, an alternative theory of liability under Count II of the complaint, as well as dangerous probability of achieving monopoly power, an element of the attempt to monopolize theory, plaintiff has produced reproductions of magazine and trade journal articles which purport to show that AT & T retains the largest share of the tele-

communications service and equipment market. The unverified, unsworn information contained therein is not "evidence" of the market share and thus cannot establish the actual monopoly power element of the monopolization claim, or dangerous probability of success in an attempt to monopolize the relevant market.

For all of the foregoing reasons, we conclude that plaintiff has failed to bear its burden on summary judgment with respect to Count II, as well as Count I. Consequently, having determined that plaintiff has failed to produce sufficient evidence to establish essential elements of the causes of action alleged in the complaint, we must also conclude that plaintiff has failed to demonstrate that there is evidence available from which a jury might return a verdict in its favor with respect to either count of the complaint. Accordingly, we will enter summary judgment in defendants' favor as to the entire complaint.

---

**3.** In reaching this conclusion, we have considered plaintiff's argument that its ability to obtain evidence of intent has been hampered by defendant ATTIS's inability to produce certain documents referred to in n. 1, *supra.* Plaintiff does not explain, nor can the Court otherwise discern how documents relating to the sale of a single telephone system to a single customer can support a specific intent to monopolize a nationwide market.