**JOAN SEALEY-CHRISTIAN, Appellant/Plaintiff**

**v.**

**SUNNY ISLE SHOPPING CENTER, INC., and KIDDIE TIME, INC.
d/b/a LITTLE SHOES™, Appellees/Defendants**

S. Ct. Civ. No. 2008-062

Supreme Court of the Virgin Islands

November 23, 2009

410

411

412

LEE J. ROHN, ESQ., Rohn & Cameron, LLC, Christiansted, St. Croix, USVI, *Attorney for Appellant.*

WILFREDO A. GEIGEL, ESQ., EUGENIO W.A. GEIGEL-SIMOUNET, ESQ., Law Offices of Wilfredo A. Geigel, Gallows Bay, St. Croix, USVI, *Attorneys for Appellee.*

HODGE, *Chief Justice*; SWAN, *Associate Justice*; and BRADY, *Designated Justice.*[1]

---

[1] Associate Justice Maria M. Cabret is recused from this case. The Honorable Julio A. Brady has been designated in her place pursuant to title 4, section 24(a) of the Virgin Islands Code.

## OPINION OF THE COURT

(November 23, 2009)

## I. FACTS AND PROCEDURAL HISTORY[2]

SWAN, J. On November 8, 2002, between 9:00 a.m. and 10:30 a.m., Joan Sealey-Christian ("Appellant" or "Sealey-Christian") was traversing the sidewalk in the rear section of Sunny Isle Shopping Center, ("Appellee" or "Sunny Isle") in Christiansted, St. Croix on her way to her vehicle in the parking lot. Sunny Isle Shopping Center, Inc. is the owner and lessor of the Sunny Isle Shopping Center. On the same day, Kiddie Time, Inc. d/b/a Little Shoes ("Kiddie Time") was one of numerous lessees of commercial space at Sunny Isle. A metal service door provides access to the rear of the Kiddie Time Store. (J.A. at 87.) This metal door opened outward, and when in the open position, it encroached upon the rear sidewalk adjacent to Kiddie Time. (*Id*. at 85, 97.) The metal service door's interior doorknob had been missing for a few days and possibly up to a week; consequently, a sharp piece of metal for the doorknob was protruding from the door. (*Id*. at 87.) The trial record reveals that the metal service door was opened infrequently or approximately once per week or less. (*Id*. at 87, 164.) Appellant has walked in this area of Sunny Isle for approximately thirty-five years and never has seen the metal service door open. (*Id*. at 190.)

During her walk, Appellant occasionally looked down towards her feet, because it was drizzling and the rain was making her pathway wet. (*Id*. at 70.) Therefore, she wanted to avoid falling. (*Id*.) As Appellant approached the metal service door, it unexpectedly opened, causing Appellant to collide with the door, injuring her shoulder. (*Id*. at 70.)

Appellant sustained a cut from the door, accompanied by excruciating pain in the area of her injury. (*Id*. at 73.) Appellant visited the local hospital's emergency room later that day and has seen one other doctor concerning the injury she sustained. She also has visited a rehabilitation center for medical treatment of her injury. (*Id*. at 195.)

---

[2] Except where otherwise indicated, the facts herein have been construed in the light most favorable to Appellant. *See* section II, *infra*, for the standard of review.

Jason Tuitt ("Tuitt"), an employee of a security firm hired by Appellee, was one of two security guards on duty the day of Appellant's accident. Tuitt testified in his deposition that he normally walks pass the rear of Kiddie Time at least twice a day. (J.A. 158.) Tuitt's main duties included patrolling and inspecting the exterior and common areas of Sunny Isle, as well as areas inside the various stores in the shopping center. (*Id.* at 160.) Tuitt would also report unsafe or dangerous conditions he discovered to the individual store owners or to Sunny Isle's management. (*Id.*) Tuitt did not notice anything unusual with Kiddie Time's rear metal service door. (*Id.* at 162.) David Glasgow ("Glasgow"), Appellee's maintenance manager of physical assets at Sunny Isle, is Sunny Isle's contact person to whom security personnel would normally report any unsafe condition they discovered on the premises. (*Id.* at 162.) Glasgow stated that if there was a problem with Kiddie Time's rear door, and it needed to be repaired or replaced, it is the lessee's responsibility to make the needed repairs. (*Id.* at 184.) Eulogio Ruiz ("Ruiz"), owner of Kiddie Time, never informed Appellee about the missing doorknob. (*Id.* at 85, 93.)

The commercial lease between Sunny Isle, Lessor, and Kiddie Time, Lessee, provides that Kiddie Time is responsible for all repairs to "the doors."[3] Unlike the doors to the front entrance of Kiddie Time, the metal service door at the rear entrance of the store was part of the premises when Sunny Isle and Kiddie Time consummated their lease agreement.[4]

---

[3] Article X, section 10:02 of the commercial lease between Appellee and Kiddie Time provides:

> Section 10:02 Lessee shall (except for repairs required in Section 10:01 above to be performed by Lessor), at its own cost and expense, make all repairs, structural or otherwise, in connection with Lessee's work and to the interior of the Demised Premises and the fixtures and equipment therein, and appurtenances thereto, including the exterior and interior windows, doors and entrances . . .

(J.A. at 122.)

[4] The following exchange took place between counsel for Appellant and Ruiz concerning the fixtures in place and subsequent renovations when Kiddie Time first established itself at Sunny Isle:

> Q: What about the doors, were the doors in place already in Sunny Isle?
> A: Yeah. Everything was — the only thing I got was an empty space with a back door. They didn't have no front door.
> Q: And did Sunny Isle provide you with keys to the space?
> A: To the back door, yeah.
> Q: So they gave you keys to the back door and the front door?

(J.A. at 93.) The lease agreement contains various clauses that regulate the use of the premises, regulate repairs to the premises, regulate liability considerations concerning Sunny Isle's walkways, and regulate use of the sidewalk adjacent to Kiddie Time. Among these clauses is one that makes Kiddie Time responsible for maintaining in "good order, condition and repair" doors and entrances. (*Id.* at 121-22.) However, the lease simultaneously gave Sunny Isle the right to enter Kiddie Time's premises at any reasonable time to inspect and to make repairs.[5] Further, the lease regulated the time and place of deliveries to Kiddie Time, by providing that "loading and unloading of goods, shall be made only by way of the rear of the Demised Premises or at any other reasonable location designated by the Lessor, and only at such reasonable time designated for such purpose by Lessor[.]" (*Id.* at 152.)

Several persons hired by Appellee regularly patrol its premises. Security personnel patrol the premises on a daily basis, including the premises surrounding Kiddie Time. (J.A. at 94.) Similarly, Appellee's maintenance personnel patrol the premises on a daily basis, including the area around Kiddie Time. (*Id.* at 91, 168.) Additionally, maintenance personnel inspect the exterior of the building "pretty often[;]" at least once per month. (*Id.* at 166.) Finally, the personnel who clean Sunny Isle were also "walking the [C]enter . . . most of the day . . . ." (*Id.* at 177.)

On December 10, 2002, Appellant filed her Complaint in the Superior Court against both Sunny Isle Shopping Center, Inc. and Kiddie Time,

---

A: No, the back door. There is no front door I'm saying when I first rented that place.
. . .
Q: What kind of door do you have in the front?
A: Well, I have a glass door. Well, you know, the glass.
Q: Was that glass door there when you moved into the premises or is this something that you installed?
A: I installed it.

(J.A. at 93.)

5 Article XVI, section 16:01 of the lease states, in pertinent part:

Section 16:01 Lessor or Lessor's agents shall have the right to enter upon the Demised Premises at all reasonable times to examine the same and to make such repairs, alterations, improvements or additions in the Demised Premises, or in the building of which they are a part, as may be necessary[.]

(*Id.* at 132; Lease Contract at Art. XVI, § 16:01.)

416

Inc.,[6] alleging, among other things, that the premises were unsafe because, when in the open position, the metal service door encroached upon the sidewalk with a broken piece of metal protruding from the door's interior door knob. (J.A. at 31.) Appellant made similar allegations in her Deposition (*see, e.g., id.* at 70.) and in her Responses to Appellee's Interrogatories, (*see, e.g., id.* at 202.). Also, Appellant alleged that Appellee had failed to provide any warning about the unsafe condition on its premises. (*Id.* at 32.) In its Answer to the Complaint, Appellee responded, in pertinent part, that it "is not responsible for [Appellant's] injuries[,] . . . was not negligent, . . . [and that Appellant's] own fault and carelessness was the cause of his [sic] injuries[.]" (*Id.* at 33-34.)

Subsequently, on October 12, 2004, Appellee filed a Motion for Summary Judgment wherein Appellee stated that it could be held liable "only if it owed a legal duty to plaintiff on the facts alleged in the complaint." (J.A. at 37.) Appellee argued that "an open door on the sidewalk" was not a dangerous condition that merits a warning, and that Appellant has provided no direct evidence to disprove that contention. Likewise, Appellee contended that Appellant "will be incapable at trial to present any evidence whatsoever slight," to show that the open door was the proximate cause of Appellant's accident. (*Id.* at 39-40, 43.) Appellee also stated that the open metal service door was a known or obvious danger. (*Id.* at 41.)

In Appellant's Opposition to Sunny Isle Shopping Center, Inc.'s Motion for Summary Judgment, Appellant argued that the trial court should not grant Appellee's Motion because of the existence of three genuine issues of material fact; namely, (1) "whether Sunny Isle failed to keep its sidewalk safe[,]" (2) "whether such failure proximately caused [Appellant's] injuries[,]" and (3) "whether the danger of the door encroaching upon the sidewalk was known or dangerous." (*Id.* at 46.)

On August 10, 2007 the trial court entered an Order granting Appellee's Motion for Summary Judgment and dismissing Appellant's claims with prejudice. In the "Argument" section of its Order, the trial court found that the metal door installed along the rear sidewalk was a known or obvious danger to Appellant. (J.A. at 11-12.) Additionally,

---

[6] On July 23, 2008 the trial court entered an Order dismissing Appellant's case with prejudice against Kiddie Time, Inc., because the parties had reached a settlement. (*Id.* at 18.)

weighing the evidence, the trial court concluded that the door handle had not been broken for a sufficient period of time that it should have been discovered by Appellee. (*Id.* at 15.)

Appellant's Notice of Appeal was timely filed on July 28, 2008. An Amended Notice of Appeal was filed on August 18, 2008.[7] For the reasons elucidated below, we conclude that genuine issues of material fact exist in the trial court's record; therefore, we will reverse the trial court's August 10, 2007 Order granting Appellee's Motion for Summary Judgment and remand this case to the trial court for further proceedings consistent with this opinion.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction pursuant to title 4, section 32 of the Virgin Islands Code ("Code"). Section 32 grants this Court jurisdiction over "all appeals arising from final judgments, final decrees or final orders of the Superior Court[.]" V.I. CODE ANN. tit. 4, § 32. A Superior Court order granting a party's motion for summary judgment is a final order within the meaning of Section 32 of the Code.[8] *See V.I. Gov't Hospitals and Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 279 (V.I. 2008) ("A final judgment, decision, or order is one that ends the litigation on the merits and leaves nothing to do but execute the judgment.") (internal quotations and citations omitted). Consequently, title 4, section 32 of the Code authorizes this Court to review an appeal from a trial court's order terminating litigation through the grant of summary judgment.

A trial court's grant of summary judgment is subject to plenary review. *Teamsters Industrial Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir. 1993) ("[w]e . . . exercise plenary review

---

[7] Appellant's Amended Notice of Appeal indicates that it was served on August 18, 2008. (J.A. at 3.) The Docket of the Civil Division of the Superior Court, however, contains no entry reflecting the filing of Appellant's Amended Notice. (J.A. at 19-30.)

[8] The trial court's grant of summary judgment became a final appealable order within the meaning of title 4, section 32 of the Virgin Islands Code on July 23, 2008; the date on which a final disposition was made concerning the other defendant at trial, Kiddie Time, Inc. *Hagley v. Hendricks*, S. Ct. Civ. No. 2007-026, 2007 V.I. Supreme LEXIS 8, *7 (V.I. Dec. 28, 2007) ("[a]bsent certification under [Federal Rule of Civil Procedure 54(b)] any order in a multi-party or multi-claim action, even if it appears to adjudicate a separable portion of the controversy, is interlocutory.") (quoting 10 CHARLES A. WRIGHT et al., at § 2654.) (internal quotations omitted).

over the [trial] court's order granting summary judgment."); *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991) ("[o]ur review is plenary."). Further, our inquiry mandates application of the same legal standard required at the trial court level. *Teamsters Indus.*, 989 F.2d at 135 ("[w]e apply the same test as the [trial] court[;] .... Moreover, clear error review is never appropriate in the procedural context of a summary judgment motion[.]"); *Wolfe v. Barnhart*, 446 F.3d 1096, 1100 (10th Cir. 2006) (appellate courts review motions for summary judgment according to "the same legal standard employed by the [trial] court.") (citation omitted).

## III. ISSUE

Whether the trial court erred in finding that there exists no genuine issue as to any material fact and, therefore, erred in granting Appellee's Motion for Summary Judgment.

## IV. DISCUSSION

The Supreme Court of the United States has established that "trial courts should act . . . with caution in granting summary judgment[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2510, 81 L. Ed. 2d 202 (1986). Because summary judgment balances the complainant's right to be heard with the need for judicial economy, "we must accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff. We can affirm the [trial] court only if no relief could be granted under any set of facts that could be proved." *Turbe*, 938 F.2d at 428. Therefore, summary judgment is mandated only "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Beard v. Banks*, 548 U.S. 521, 529, 126 S. Ct. 2572, 2578, 165 L. Ed. 2d 697 (2006) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)). This legal principle has been adopted because it is only when such a failure occurs that a court can conclude that there is " 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23.

██ Consequently, in order to determine whether summary judgment was mandated at the trial level, we must analyze the decision of the trial

court in the context of the substantive law that governed the complainant's cause of action. "The nature of the legal duty owed by a defendant is generally a question of law." *Turbe*, 938 F.2d at 429. Therefore, our analysis is confined to the Federal Rule of Civil Procedure, Rule 56(c)[9] rubric that "[i]n order to establish a claim of negligence, the plaintiff must demonstrate that the defendant owed the plaintiff a legal duty, that the defendant was negligent, and that the defendant's actions were the legal cause of the plaintiff's injury." *Id.* at 428 (quoting RESTATEMENT (SECOND) OF TORTS §§ 281, 328A (1965)).

In essence, appellate courts reviewing the granting of motions for summary judgment are charged with undertaking three basic tasks; namely to: (1) accept, (2) allow, and (3) ask. *See Bushman v. Halm*, 798 F.2d 651, 656-57 (3d Cir. 1986); *see also, Turbe* 938 F.2d at 428. Initially, the court must accept "[the non-moving party's] allegations . . . as true, even if in conflict with those of the moving party." *Bushman*, 798 F.2d at 656. Next, the court must allow "[a]ny inference drawn from the underlying facts contained in the evidentiary sources" to be viewed in the light most favorable to the nonmoving party. *Id.* at 656-57. Finally, the court must ask whether, "from the evidence available at the time of the motion's disposition, a jury could reasonably have inferred either directly or circumstantially that plaintiff's injuries [were proximately caused by the defendant.]" *Id.* at 657.

## A. Accept the Facts in the Light Most Favorable to the Appellant

"One of the principle purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex*, 477 U.S. at 323-24. Consequently, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotations omitted). Having meticulously combed through the record, we have considered the salient facts in this case in the light most favorable to Appellant and have concluded that more than one genuine issue of material fact exists. An issue of material fact is genuine

---

[9] Federal Rule of Civil Procedure 56(c), in pertinent part, states: "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(c).

and consequently summary judgment is improper, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248; *see also, Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). To meet her burden, Appellant need only provide "significant probative evidence tending to support the complaint." *Liberty Lobby*, at 249 (quoting *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968)) (internal quotations omitted).

█ In reviewing the trial record, we find that significant, probative evidence has been produced by Appellant in the form of the various depositions, documents and motions filed in the trial court. Cumulatively, these filings reflect inconsistent statements concerning whether the metal service door suddenly opened into Appellant's path of travel, or whether the service door was open for a sufficient length of time to allow Appellant to see it and avoid colliding with it. Appellant's testimony conflicts directly with Ruiz's testimony, regarding the factual circumstances of how the accident occurred and conflicts on the individual actions of Appellant and Ruiz immediately before the accident.

Appellant stated in her deposition that it was drizzling immediately before her accident and that she was "watching her steps" and looking "all around" her. (J.A. at 70.) Appellant stated that she was walking "[k]ind of fast" and that she wanted to get out of the rain. (*Id.*) Appellant further stated that while she was walking "kind of fast" she did not see the metal service door open, but rather, that the service door opened suddenly into the center of the sidewalk. (*Id.*) Appellant asserted that she collided so suddenly with the metal service door that it was only during her collision with the metal service door that she first saw the open door. (*Id.*) Appellant further asserted that she looked up after colliding with the same door and saw Ruiz standing underneath the door frame laughing at her. (*Id.* at 71.)

Ruiz stated in his deposition that he had opened the metal service door, but only partially, because it was raining. Thereupon, he saw Appellant approaching the open door where he had been standing underneath the door frame, holding onto the doorknob. (*Id.* at 85.) According to Ruiz, Appellant was five or six feet away when he initially opened the metal service door. (*Id.* at 84.) Ruiz stated that he greeted Appellant, saying "Hello, Miss. How are you?" and that he told Appellant to "[b]e careful with the door." (*Id.* at 85.) Ruiz also stated that the metal service door

opened outward, and he believed that Appellant would walk around it. (*Id.*) Ruiz asserted that he then walked to his car that was parked nearby, while Appellant was "standing there." (*Id.* at 85-86.)

Similarly, there is inconsistent evidence concerning whether the premises behind Kiddie Time were patrolled and inspected on a daily or weekly basis, thereby weighing heavily on the issue of whether sufficient time had passed for the unsafe condition to be discovered by Appellee. Such facts could only have been ascertained from the factual circumstances based upon the sworn statements of Appellant, Appellee's employees, Ruiz and other witnesses in this case. Because we find these existing genuine issues of material fact in the record before us, and all having been raised by Appellant at the trial level or easily discerned from a careful search of the record, the trial court's entry of summary judgment was improper.

## B. Allow Inferences to be Viewed in the Light Most Favorable to the Appellant

■ In ruling on a motion for summary judgment, the court must determine whether any issue exists that would require the parties' arguments to be heard by a jury. *See* FED. R. CIV. P. 56; *Liberty Lobby*, 477 U.S. at 249 ("at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). The function of the court in deciding a motion for summary judgment has been held to be identical to its role in deciding whether a directed verdict is appropriate. *Liberty Lobby*, 477 U.S. at 250-51. The United States Court of Appeals for the Third Circuit ("Third Circuit") has categorically stated, "it is not the function of the court to assume the role of the factfinder upon summary judgment. On summary judgment, a court is concerned with the sufficiency and not the weight of the evidence." *Bushman*, 798 F.2d at 660. Specifically, "the weighing of the evidence . . . [is a] jury function[], not [the function] of a judge[.]" *Liberty Lobby*, 477 U.S. at 255. It was improper for the trial court to weigh the evidence in ruling on Appellee's Motion for Summary Judgment. Rather, the trial court was to view all facts in the light most favorable to Appellant, and from the same facts, draw all reasonable inferences in favor of Appellant and thereupon determine whether any genuine issue of material fact existed.

## C. Whether Genuine Issues of Material Facts Exist that Must be Resolved by the Factfinder

█ We may not uphold the trial court's grant of summary judgment if Appellant made a showing sufficient to prove the existence of an issue of material fact that properly ought to be resolved by a jury. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The United States Supreme Court has held that "[t]he court may not grant summary judgment where the nonmoving party has made a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 657 (quoting *Celotex*, 477 U.S. at 322) (internal quotations omitted). Likewise, the United States Supreme Court has opined that "the plain language of [the summary judgment rule] *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322 (emphasis added.) In considering these two limits, it is apparent that the *raison d'etre* of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Id.* at 323-24. Far from lacking factual support, the record in this case contains ample evidence demonstrating the existence of genuine issues of material fact that are to be properly resolved by the factfinder. *See id.* at 324.

### 1. Duty

Having previously recognized that in order to properly rule on a motion for summary judgment, the court confronted with this task must be cognizant of the legal context within which the jury will be asked to deliberate; therefore, we now outline the legal framework applicable in this case. *See supra*; *Matsushita*, 475 U.S. at 585-86.

█ On the issue of invitees injured by the alleged negligent acts or omissions of possessors of land, the Restatement (Second) of Torts[10] elucidates the duty owed to invitees:

---

[10] Absent local laws to the contrary, "rules of the common law, as expressed in the re-statements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands[.]" 1 V.I.C. § 4; *see also, Turbe*, 938 F.2d at 428 ("[i]f

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343 (1965). Section 343 is to be read in conjunction with section 343A. *Id.* at § 343, cmt. a. Section 343A provides in pertinent part:

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

*Id.* at § 343A. Invitees are safeguarded by the heightened duty of the possessor to affirmatively make the premises safe for the invitee and provide warnings about the condition of the premises. *Id.* at § 343, cmt. b. Finally, section 360 of the Restatement, also cited by Appellant, provides:

A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land . . . *for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe.*

the Restatement does not govern, we look to the common law as generally understood and applied in the United States.") (internal quotations omitted).

RESTATEMENT (SECOND) OF TORTS § 360 (1965) (emphasis added). Section 360, comment f provides that, if the lease permits third persons to enter upon the premises retained within the lessor's control, it is immaterial whether such persons enter as invitees or licensees. *Id.* at cmt. f. Article VII of the commercial lease agreement between Appellee and Kiddie Time authorizes third persons[11] to use the premises' common areas. (J.A. at 115.) It is noteworthy that neither party has disputed that Appellant was a business invitee.[12] Therefore, because at the time of Appellant's accident Appellant was an invitee and Appellee is a possessor of land, Appellee owed Appellant a duty to protect against unsafe conditions on the premises which were either known or reasonably discoverable by Appellee. Within this context, we next examine the facts in the light most favorable to Appellant, drawing all inferences in Appellant's favor.

## 2. Negligence

Appellant asserts that the trial court improperly resolved disputed issues of material fact and improperly drew inferences from those facts. (J.A. at 8, 13.) The facts in the light most favorable to the non-moving party indicate that Appellant had traversed this particular area of Sunny Isle for approximately thirty-five years without ever seeing the metal service door open. (*Id.* at 190.) Appellee's employees and agent provided sworn statements that very seldom or approximately once per week or less was the metal service door opened. Appellee's tenant, employees and agent were aware that, when in the open position, the metal service door encroached upon the sidewalk. Moreover, it appears that the metal service door was unable to be restrained against the wall of the building, out of

---

[11] Article VII of the lease provides, in pertinent part:

Lessor grants Lessee . . . a nonexclusive license for the Term to use the common areas incommon (sic) with others entitled to use the common areas including, without limitation, Lessor and other lessees of the Shopping Center, and their respective employees, customers, invitees, licensees and visitors, and other persons authorized by Lessor, subject to the terms and conditions of this Lease.

(J.A. at 115.)

[12] A business invitee is one who "enters upon an implied representation or assurance that the land has been prepared and made ready and safe for his reception." RESTATEMENT (SECOND) OF TORTS § 343, cmt. b (1965). A business licensee, on the other hand, is one who enters the premises for his own purposes; one who "enters with the understanding that he will take the land as the possessor himself uses it." *Id.* Consequently, a possessor owes different duties with respect to a business invitee and a licensee. *See Turbe*, 938 F.2d at 429-430.

invitees' path of travel, and otherwise could not be made safe for invitees. Considering these facts, Appellee could be found to have had actual knowledge of the unsafe condition of the door; namely, that the door was hazardously placed so that it obstructed the sidewalk when open. Importantly, the record before us does not disclose that Appellee installed or erected a sign or other mechanism to alert or to inform Appellant of the precarious condition created by the door opening into her pathway on the sidewalk.

 The trial court examined sections 343 and 343A of the Restatement (Second) of Torts and concluded that a "three-foot by six-foot metal door, being used between 9:00 a.m. and 10:30 a.m., a time when deliveries would typically be made, is a known or obvious danger to someone familiar with the area." (J.A. at 11-12.) However, considering the specific facts in this case, a jury could have concluded otherwise. The record is replete with facts in support of both of Appellant's contentions that she had never seen this door open prior to her collision with it, and that this particular door, being used between 9:00 a.m. and 10:30 a.m., was not a known or obvious condition to invitees using the sidewalk. Moreover, the state of disrepair of the same door was not obvious to invitees. In *Kaplan v. Exxon Corp.*, 126 F.3d 221, 225 (3d Cir. 1997), the Third Circuit, placing itself in the shoes of the Supreme Court of Pennsylvania, discussing a prior decision from that court, observed that whether a condition is known or obvious is normally an issue for the trier of fact. In this case, the trial court impermissibly weighed the evidence and engaged in malapropos fact-finding by accepting some facts as true and rejecting others. In reaching its conclusion that the door was an "open and obvious" danger, (*Id.* at 11.), the trial court accepted Appellee's contention that Appellant had been walking an arm's length away from the wall. Appellant argued that she did not know the distance from the wall she was walking, but was in the center of the sidewalk. The trial court also accepted Appellee's argument that the open door was a "known and obvious danger[.]" Appellant specifically and vociferously argued that in her thirty-five years of weekly frequenting the area she had never seen the metal service door open, either prior or subsequent to this incident. No evidence was introduced addressing whether Appellant knew or should have known that the metal service door was operable and that the same door opened outward across the sidewalk instead of inward, making it a potential hazard to invitees on the sidewalk. Ruiz's deposition

testimony indicates that at the time of Appellant's accident there were no packages, boxes, equipment or other mundane objects on the sidewalk adjacent to or in proximity to the metal door. (*Id.* at 97.) Therefore, there were no visual cues or evidence that would have alerted an unsuspecting invitee that the service door was being used or about to be used for a delivery. Consequently, Appellant had no knowledge that the door was about to open into her path of travel. Furthermore, Appellant had absolutely no reason to know that the metal service door was utilized by Kiddie Time for deliveries and, therefore, that the door would open into her pathway while in use. However, Appellee's maintenance personnel and security personnel had real knowledge that the same door would be opened by Kiddie Time for delivery purposes and into the pathway of invitees. Accordingly, the trial court usurped the function of the factfinder when it resolved the parties' conflicting factual contentions.

 Inherent in the Restatement Rule espoused by Appellee, that possessors of land are not required to protect against "known or obvious" dangers, is the presumption that the invitee "appreciate . . . the probability and gravity of the threatened harm[.]" RESTATEMENT (SECOND) OF TORTS § 343A, cmt. b. Such appreciation by Appellant that a door would open suddenly onto a common area sidewalk and in her direct pathway is highly unlikely in circumstances in which Appellant had never seen the same door open at any time throughout the thirty-five year period she had frequented the Shopping Center. Moreover, the fact that Appellant disputed the characterization of the door as a "known or obvious" danger, and she had a plausible and cogent basis upon which the disputed fact could be advanced, was a sufficient basis for the trial court to recognize that this case was an inappropriate candidate for summary judgment.

Appellant can easily distinguish the facts in this case from the facts in *Ambrose v. National Foods Discount*, 42 V.I. 229 (D.V.I. 2000), where a plaintiff familiar with the area was found to have encountered a known or dangerous condition. In *Ambrose*, the plaintiff was familiar with the defendant grocery store's practice of stacking boxes in its aisles so that it would not have to hire regular stock clerks and consequently, could pass on the savings from its lower operating expenses to its customers. *Id. at* 232. The trial court granted summary judgment where it found the boxes in defendant's aisle to be a known or obvious danger to the plaintiff who was familiar with the store (and its practice of stacking boxes in the aisles). Unlike Appellant, the plaintiff in *Ambrose* successfully walked

past the boxes three times before tripping on one of the boxes the fourth time. *Id.*

Appellee, however, could easily analogize the circumstances surrounding Appellant's accident to *Ambrose*, if one believes Ruiz's statements and totally disregards Appellant's rendition of the facts. Appellee claims that Ruiz saw Appellant approaching and had time to greet her prior to Appellant's accident. (Appellee's Br. 4-5; J.A. at 83.) Ruiz's sworn statement contends that Appellant greeted Ruiz in return. (J.A. at 240.) Ruiz's statement also specifies that it was drizzling, that he noticed Appellant walking "very slowly[,]" and that she had actually stopped walking when he opened the service door, at which time he allegedly exchanged greetings with Appellant. (*Id.* at 97, 240.) Appellee also contends that Appellant was aware of the door and "had passed the door prior to the accident[.]" (Appellee's Br. 4.) Considering Appellee's contention, one may be inclined to conclude that, similar to the situation in *Ambrose*, Appellant willingly approached a known or dangerous condition. However, Ruiz's sworn statements about the accident are in direct conflict and incongruous with Appellant's sworn statements about the same accident, thereby creating a genuine issue of material fact on the issue of liability. Importantly, Appellee persistently ignores the fact that both Appellant and Ruiz gave contradictory sworn statements concerning the circumstances surrounding the accident and how the accident occurred. Therefore, there is at least one genuine issue of material fact in this case. Whether Appellant's or Appellee's argument is more accurate or credible is for the factfinder to decide.

The trial court also found that "a broken door handle can not, in the absence of any evidence that [Appellant] saw or should have seen it, constitute a known or obvious danger." (J.A. at 12.) The trial court then examined sections 343 and 344 of the Restatement (Second) of Torts to determine the possible duties Appellee may have owed to Appellant. The trial court concluded that Appellee had a duty to Appellant to discover and warn against known or dangerous conditions on the premises and that Appellee had exercised reasonable care to discover dangerous conditions on the premises. The trial court also concluded that the doorknob had not been broken for a sufficient time that would have allowed Appellee to have discovered it. (*Id.* at 14-15.) We disagree with the implied assertion that reasonable minds could not differ as to this conclusion. Nonetheless, the trial court ignored a salient fact. The metal service door, once in the

open position, was not restrained against the partition wall to prevent it from languishing in the pathway of invitees. Essentially, Appellee failed to remove the unsafe condition created by the metal service door or to make the area safe or to provide any warning of the danger that confronted Appellant and all similarly situated invitees. Importantly, Appellee's maintenance personnel who patrolled the area around Kiddie Time on a daily basis and who inspected the exterior of the building "pretty often" (*Id.* at 91, 166, 168.) must have had notice of the absence of a restraining mechanism which allowed the metal service door to remain in invitees' pathway and to imperil invitees traversing the same sidewalk. Additionally, the trial record does not disclose that any signs were posted to alert or apprise invitees of the perilous situation created by the opening of the metal service door.

Appellant alleged that she was injured by a broken metal object protruding from the door. (J.A. at 189.) Appellant's sworn statement informs that she was walking fairly fast, looking at her feet, when she suddenly "walked into this door[]" and subsequently "felt this pain from this lock[.]" (*Id.* at 75.) Appellant stated that the door opened into the center of the sidewalk. (*Id.* at 70.) Prior to the collision, Appellant "didn't see any open door[,] . . . didn't see anything obstructive in the . . . walkway[.]" (*Id.* at 71.) Immediately following her collision with the metal door, Appellant stated that she looked up and saw Ruiz laughing at her before he departed the immediate area where he was standing and proceeded to his car. (*Id.* at 71, 75.) Appellee, on the other hand, contends that the protruding metal object was on the opposite side of the door from the side with which Appellant collided; therefore, Appellant could not have collided with the broken doorknob. (Appellee's Br. 4; J.A. at 96.) Ruiz's sworn statement is that the metal service door's inside locks and doorknob were missing and that the outside doorknob was intact on the day of the accident. (J.A. at 96.) But, once the metal service door opens outward, the inside part of the door automatically becomes an outer part of the same door thereby exposing the protruding object. Ruiz further stated that Appellant was walking an arm's length away from the wall when she approached the metal service door. (*Id.* at 97.) However, even though the door opened onto the sidewalk, no party has divulged to us that the door could be secured against the premise's partition wall, and if it could have been secured, the situation would have abated, including any

danger created by the door's location in Appellant's pathway. (*See id.* at 94.)

Appellant also argues that Appellee had constructive notice of the unsafe condition of the doorknob. (Appellant's Br. 17.) Appellant points to the length of time the doorknob had been missing, the practices of Appellee's employees in monitoring the premises and, most importantly, the conflicting testimonies concerning actions taken by Appellee to satisfy its duties under section 343 of the Restatement (Second) of Torts. (*Id.* at 17.) A review of the record reveals discrepancies concerning the exact nature and frequency of the inspection of the various parts of the premises in the rear of Kiddie Time. (J.A. at 91, 94, 166, 168, 177.) Additionally, the service door, unlike the front door, was already a part of the leased premises when Kiddie Time took possession of the premises in 1990 (*Id.* at 240.), and Appellee's maintenance and security personnel must have known that when open, the metal service door would encroach upon the sidewalk. (*Id.* at 70.)

Various parts of the record suggest that Appellee, through its employees, had constructive notice of the unsafe condition created by the service door encroaching upon the sidewalk. Tuitt stated that he walked past Kiddie Time's metal service door more than twice a day. (J.A. at 158.) Tuitt also stated that the metal service doors that allow access to the various stores at Sunny Isle tend to be opened only to allow merchandise or staff to enter the store. (*Id.* at 164.) Security personnel were charged that while on patrol to look for "any obstacle or obstruction that anybody could get hurt [sic] or injure anybody[.]" (*Id.* at 160.)

The record, considered in the light most favorable to Appellant, lends support to the argument that Appellee retained access to the metal service door. For example, in the commercial lease, Appellee retained the right to enter the premises "to make such repairs, alterations, improvements or additions" that may be necessary. (J.A. at 132.) Appellee also retained the right to make any repairs which Kiddie Time refused or neglected to make. (*Id.* at 122.) The record clearly reflects that Kiddie Time had not reported the unsafe condition to Appellee. (*Id.* at 85, 93.) However, the record also reflects that Appellee believed it had no duty to inspect the door and did not inspect the door. (*Id.* at 121-22, 160.)

█ Ruiz replaced the broken doorknob immediately following Appellant's accident.[13] (J.A. at 91.) The repairs necessary to remove the unsafe condition from the service door were neither time-consuming, nor complex. Ruiz simply went to the Kmart Store and purchased "a knob and put it on." (*Id.*) Although the broken doorknob languished in its unsafe condition for days, perhaps up to one week or longer, it took Ruiz less than one hour to convert the protruding metal object into a safe, properly functioning door handle. (*Id.*) The aforementioned facts permit the reasonable inference that, considering the maintenance personnel's daily patrols and other less frequent inspections of the area in the rear of Kiddie Time, Appellee had constructive knowledge that the service door, when in the open position, was unsafe. At the very least Appellee had constructive knowledge of the metal service door's unsafe manner of opening and, at most, Appellee also had constructive knowledge that the same door created a precarious condition for invitees traversing the sidewalk. Despite the apparent evident ease with which the service door could have been rendered less dangerous, Appellee failed to take any measures towards making it less dangerous, such as installing a mechanism against the partition outer wall to restrain the door, when open, against the same wall and out of the pathway of invitees.

### 3. Causation

#### a. Cause in Fact

█ We find that the facts in the trial record form a sufficient basis upon which reasonable jurors could infer that Kiddie Time's metal service door and/or broken doorknob were the proximate causes of Appellant's injury. In determining causation in fact, we must ask whether Appellee's act or omission was material in causing Appellant's injury. *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 73 (3d Cir. 1996). In *Fedorczyk,*

---

[13] Tile 5, section 891 of the Virgin Islands Code provides:

When after the occurrence of an event remedial or precautionary measures are taken, which, if taken previously would have tended to make the event less likely to occur, evidence of such subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event.

5 V.I.C. § 891. Notably, the language of the rule governing the use of subsequent remedial conduct at trial in the Virgin Islands does not prohibit use of this conduct to prove the feasibility of rendering the place or thing less dangerous or the feasibility of conducting repairs.

the Third Circuit examined the trial court's grant of summary judgment in favor of Caribbean Cruise Lines. Plaintiff Fedorczyk had alleged that her slip and fall accident in a tub aboard Caribbean Cruise Lines's vessel was due to its failure to put in place sufficient non-slip stripping in the tub. *Id.* at 73. Fedorczyk was unable to provide any evidence to demonstrate where she was standing in the tub and consequently, that sufficient stripping would have been a safeguard against her fall. The Third Circuit, therefore, found that plaintiff Fedorczyk had failed to provide sufficient evidence that defendant Caribbean Cruise Lines's negligence in failing to provide sufficient striping was the cause in fact of her accident. Using the evidence provided by Fedorczyk, "a jury would be left to speculate as to the cause of the injury." *Id.* at 76.

This case is distinguishable from *Fedorczyk.* Appellant adduced evidence that she was walking along the rear sidewalk of the Sunny Isle Shopping Center. Appellant adduced evidence that the service door of Kiddie Time opened at such time and in such manner as to permit Appellant to collide with the door while walking along the sidewalk. Appellant adduced further evidence demonstrating that when open, the service door of Kiddie Time encroached upon the sidewalk. Appellant experienced pain and discovered she was bleeding at the site where she collided with the metal service door. No evidence has been introduced to suggest Appellant had any subsequent accident or preexisting condition that may have caused her injury. Evidence was introduced, however, to show that the door was metal and that the interior doorknob was missing, thereby leaving a sharp object protruding from the door. Consequently, a jury need not guess as to whether Appellant's injury was the result of her collision with the metal service door that had a protruding broken doorknob.

### b. Proximate Cause

Proximate cause is established where the party who bears the burden shows that "an original act is wrongful or negligent and in a natural and continuous sequence produces a result which would not have taken place without the act[.]" *Clinger v. Duncan,* 166 Ohio St. 216, 141 N.E.2d 156, 162 (1957). In order for the negligent act to be the proximate cause of the result, the negligent act must have been a substantial factor in bringing about the result. *See Thabault v. Chait,* 541 F.3d 512, 524 (3d Cir. 2008). In this case the record reveals that

Kiddie Time's metal service door was the proximate cause of Appellant's injuries, because Appellant was injured by her collision with the metal service door. The record also reveals that almost immediately upon being injured by the metal service door Appellant began to bleed and experience pain. Appellant continues to suffer pain from her injury. At the same time, Appellee has failed to present evidence demonstrating the existence of any intervening or superseding[14] cause as to Appellant's injury. Accordingly, we find that the record contains sufficient evidence to show that the unsafe service door was also the proximate cause of Appellant's injuries.

■■■■ We express no opinion as to whether Appellee was negligent in failing to warn against or render safe either the door or the broken doorknob, but rather, have undertaken this analysis merely to demonstrate that this case was an unfit candidate for summary judgment due to the existence of numerous genuine issues of material fact over which reasonable minds could differ and the varying inferences that could be drawn therefrom. *Richmond & D. R. Co. v. Powers*, 149 U.S. 43, 45, 13 S. Ct. 748, 37 L. Ed. 42 (1893) ("It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury[.]"); *see Chicago & E.R. Co. v. Ponn*, 191 F. 682, 689-90 (6th Cir. 1911) ("it is immaterial whether [the uncertainty] arises from conflict in the testimony or because different inferences from undisputed facts might be drawn by reasonable men in the honest discharge of their duties. But if uncertainty . . . exists, the case must go to the jury.").

## V. CONCLUSION

The facts emanating from the trial record disclose the presence of more than one genuine issue of material fact that properly must be resolved by the factfinder. Viewing the facts in the light most favorable to Appellant

---

[14] The Third Circuit has defined a "superseding cause [as] an event or conduct sufficiently unrelated to or unanticipated by a defendant that warrants termination of liability, irrespective of whether the defendant's negligence was or was not a substantial factor in bringing about the harm." *Thabault*, 541 F.3d at 525. An intervening cause, however, may or may not terminate a defendant's liability. The Third Circuit has stated that an "intervening cause which is foreseeable or a normal incident of the risk created by a tortfeasor's action does not relieve the tortfeasor of liability." *Id.* at 526. Whether a cause is foreseeable or not, however, is a question for the jury. *Id.*

and drawing all reasonable inferences in favor of Appellant, we find sufficient evidence in the trial record to permit a rational factfinder to find in Appellant's favor. We express no opinion, however, concerning whether this is the outcome that should be reached by a jury in this case. Accordingly, we reverse the Superior Court Order granting Appellee's Motion for Summary Judgment and remand the case for further proceedings consistent with this opinion.